Kathleen **FLYNN**, Appellant–Plaintiff,

v.

**INDIANA BUREAU OF MOTOR VEHICLES**, Appellees–Defendants.

No. 49A02–9809–CV–727.

Court of Appeals of Indiana.

Sept. 29, 1999.

William F. Conour, Conour Doehrman Starkey, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

STATON, Judge

Kathleen Flynn appeals the trial court's grant of summary judgment in favor of the Indiana Bureau of Motor Vehicles ("BMV"). Flynn raises several issues on appeal. We address one dispositive issue: whether the trial court erred by entering summary judgment in favor of the BMV.

We affirm.

The facts most favorable to the nonmovant reveal that in 1991 Flynn purchased a used automobile from a man named Gary Djani. Djani provided Flynn with a certificate of title. Flynn later applied to the BMV for a certificate of title in her own name. The BMV issued Flynn a certificate of title for the car on May 4, 1991. The Indiana State Police confiscated the car from Flynn in 1993 after discovering that it was a stolen vehicle. Flynn and her husband sued the BMV for negligently issuing a certificate of title for the vehicle. The BMV moved for summary judgment, arguing that it was immune from liability pursuant to the Indiana Tort Claims Act ("ITCA"). The trial court granted summary judgment to the BMV; Flynn appeals.[1]

Flynn contends that the trial court erred by granting the BMV summary judgment. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving

---

1. Flynn's husband is not a party to this appeal.

party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

▮▮▮ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

▮▮▮ Flynn argues that the BMV is not immune from liability for its negligence in issuing a certificate of title for the vehicle. The ITCA provides that governmental entities may be liable for torts committed by their agencies and employees. *Peavler v. Monroe County Bd. of Comm'rs*, 528 N.E.2d 40, 42 (Ind.1988). However, the ITCA protects government entities from liability if the tortious conduct falls within certain statutorily enumerated exceptions. *Id.;* IND.CODE § 34–13–3–3 (1998).[2] The party seeking immunity has the burden of proving that its conduct falls within one of the exceptions set forth under the ITCA. *Lake County Juvenile Court v. Swanson*, 671 N.E.2d

429, 438 (Ind.Ct.App.1996), *trans. denied.* We narrowly construe immunity because it provides an exception to the general rule of liability. *Id.* at 439. .

The immunity provision at issue in this case provides:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... the issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law....

IC 34–13–3–3(10). "Governmental entity" is defined as "the state or a political subdivision of the state." IND.CODE § 34–6–2–49 (1998). The "state" is defined as "Indiana and its state agencies." IND.CODE § 34–6–2–140 (1998). Finally, the term "state agency" includes a "bureau" or "other instrumentality" of the state. IND.CODE § 34–6–2–141 (1998).

▮▮▮ On the surface, it would appear that the BMV, as a bureau of the state, is entitled to claim the protection of this immunity provision. However, Flynn cites IND.CODE § 34–13–3–2 (1998) and argues that the BMV cannot claim immunity under any of the immunity provisions enumerated in IC 34–13–3–3, including subsection (10). Flynn utilizes creative, but flawed, logic to make her point. IC 34–13–3–2 provides that the ITCA applies to "a claim or suit in tort against ... a member of the bureau of motor vehicles commission" and certain employees of the Commission. Flynn contends that because this provision applies the ITCA only to a member of the Bureau of Motor Vehicles

---

**2.** The negligent acts Flynn complains of occurred on and before May 4, 1991. The ITCA and the statutory provisions regarding the issuance of certificates of title, referred to *infra*, have been recodified since that time. The ITCA was recodified in 1998, and the certificate of title provisions were recodified in 1991. Because the parties have predomi-

nantly cited to the versions contained in the 1998 Indiana Code and because the substantive provisions of the statutes referred to in this case have not changed from their earlier form, we cite to the 1998 versions for reasons of simplicity. Where we deem it appropriate, we alternately reference the earlier versions in footnotes.

Commission or its employees, the BMV itself cannot claim immunity. She next reasons that this more specific provision controls with respect to the BMV as opposed to the general definitions of the ITCA, which would seem to include the BMV as a governmental entity. Thus, Flynn concludes that the BMV is not entitled to immunity under IC 34–13–3–3(10).

Flynn's argument fails to consider the difference between the BMV and the Bureau of Motor Vehicles Commission ("Commission"). The BMV is created by IND.CODE § 9–14–1–1 (1998). The Commission is created by IND.CODE § 9–15–1–1 (1998), which specifically provides that the "commission is a body corporate and politic" and is "separate from the state." Even if we found Flynn's argument otherwise convincing, which we do not, it must fail because IC 34–13–3–2, by its unambiguous language, applies only to the Commission. We must reject Flynn's request that we interpret the statute otherwise. *See Amoco Prod. Co. v. Laird,* 622 N.E.2d 912, 915 (Ind.1993) (judicial construction of a statute is inappropriate where a statute is clear and unambiguous).

■ Next, Flynn argues that IC 34–13–3–3(10) only grants immunity to a governmental entity for issuing a certificate of title "where the authority is discretionary under law," and that the BMV's issuance of a certificate is not a discretionary act. IND.CODE § 9–17–2–10 (1998) provides: "If the bureau is satisfied that the person applying for a certificate of title is the owner of the vehicle or is otherwise entitled to have the vehicle registered in the person's name, the bureau *may* issue a certificate of title for the vehicle." (Emphasis added.)[3] Use of the term "may"

ordinarily connotes discretion. *Schoemer v. Hanes & Associates, Inc.,* 693 N.E.2d 1333, 1340 (Ind.Ct.App.1998). Accordingly, we must conclude that the issuance of certificates of title by the BMV is discretionary within the meaning of IC 34–13–3–3(10) in absence of other indications to the contrary.

Flynn contends that several other statutory provisions indicate that the issuance of certificates of title is mandatory when the BMV is presented with a full, true, and complete application for said certificate. Flynn cites IND.CODE § 9–17–2–1 (1998), which provides, in pertinent part: "Within sixty (60) days of becoming an Indiana resident, a person *must obtain* a certificate of title for all vehicles owned by the person...." (Emphasis added).[4] Flynn also cites IND.CODE § 9–17–2–8, which provides that the "bureau shall use reasonable diligence in determining if the facts stated in an application for a certificate of title are true." Flynn contends that it is inconsistent to require a resident to obtain a certificate of title and to mandate that the BMV conduct an investigation, yet at the same time, to give the BMV discretion to arbitrarily issue or deny the certificate.

■ The requirement that vehicles be titled serves the purpose of protecting the owners of motor vehicles, persons holding liens thereon, and the public in transactions involving vehicles. *VanNatta v. Crites,* 178 Ind.App. 113, 381 N.E.2d 532, 537 (1978), *reh. denied; Champa v. Consol. Fin. Corp.,* 231 Ind. 580, 110 N.E.2d 289, 294 (1953). Requiring residents to obtain certificates of title for their vehicles is consistent with this purpose. However, it is not inconsistent with this purpose to

3. IND.CODE § 9–1–2–1(a) (1988) provided, in part: " ... if [the BMV is] satisfied, that the applicant is the lawful owner of such vehicle, or is otherwise entitled to have the same registered in his name, the department *may* thereupon issue an appropriate certificate of title over the signature of the commissioner, and sealed with the seal of the department." (Emphasis added).

4. Although the earlier version of the vehicle title statutes did not contain a provision quite like this one, IND.CODE § 9–1–2–1(j) (1988) did make it unlawful to operate a vehicle on public highways unless a certificate of title had been issued. Thus, residents were required to obtain certificates of title prior to operating a vehicle on a public highway.

grant the BMV discretion to decide whether a certificate of title should be issued for a particular vehicle. Of course, the BMV may not exercise this discretion arbitrarily, and a person may seek judicial review of an agency action that constitutes an abuse of discretion. *See* IND.CODE § 4-21.5-5-14(d)(1) (1998). Furthermore, the fact that the BMV is required to exercise diligence in determining the truth of the facts stated in an application is consistent with the idea that the BMV may not act arbitrarily. Therefore, we conclude that neither IC 9-17-2-1 nor IC 9-17-2-8 remove the BMV's discretion to issue or deny certificates of title.

Next, Flynn cites IND.CODE § 9-17-2-11 (1998) in support of her argument. This statute provides:

(a) The bureau *shall deliver* a certificate of title to the person who owns the vehicle if no lien or encumbrance appears on the certificate of title.

(b) If a lien or an encumbrance appears on the vehicle, the bureau *shall deliver* the certificate of title to the person named to receive the certificate of title in the application for the certificate of title.

(Emphasis added).[5] Flynn contends that by using the terms "shall deliver," this statute requires the BMV to issue certificates of title where a proper application has been made. Thus, Flynn concludes the BMV lacks discretion to issue certificates of title. Again, Flynn's argument is flawed. IC 9-17-2-11 does not address the issuance of certificates; rather, it addresses the delivery of certificates. Delivery is the physical act of placing the certificate in the possession of the proper person. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 336 (1985) ("deliver" defined as "to take and hand over to or leave for another person: CONVEY. . . .").

Thus, IC 9-17-2-11 says nothing about the BMV's discretion to issue certificates of title in the first instance.

Finally, Flynn cites IND.CODE § 9-17-2-15 (1998), which provides that it is a criminal offense to knowingly sell, offer to sell, buy, possess, or offer "as genuine a certificate of title . . . that is *required to be issued* by the bureau and has not been issued" by the BMV or the appropriate agency of another state. (Emphasis added).[6] Flynn argues that the emphasized language of this statute indicates the legislature's intention that there be some instances where a certificate of title must be issued. In essence, Flynn asks that we bootstrap the language from a criminal statute addressing counterfeit certificates of title onto the statutory provisions regarding the BMV's authority to issue titles. Because we do not believe that the language of IC 9-17-2-15 manifests the legislature's intention to eliminate the BMV's discretion in the issuance of titles, we decline Flynn's invitation.

We hold that the BMV is immune from liability pursuant to IC 34-13-3-3(10) for losses resulting from the issuance or denial of a certificate of title. The trial court did not err by granting the BMV summary judgment.

Affirmed.

MATTINGLY, J., and RUCKER, J., concur.

---

5. , IND.CODE § 9-1-2-1(d) (1988), provided, in part: "The certificate of title shall be delivered to the owner in the event no lien or encumbrance appears thereon. Otherwise the certificate of title shall be delivered to the person named to receive the same in the application for such certificate."

6. IND.CODE § 9-1-4-47 (1988) was similar.