**Charles RICHARDSON and Judith Hightower Richardson, and Greta A. Harris, Appellants–Plaintiffs,**

**v.**

**Nasir Raghib SALAAM and Howard Transport, Inc., Commissioners of Montgomery County and Indiana Department of Highways, Appellees–Defendants.**

**No. 54A05–9903–CV–120.**

Court of Appeals of Indiana.

April 19, 2000.

---

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, Indiana, Attorney for Appellants.

James S. Stephenson, Stephenson, Daly, Morrow & Kurnik, Indianapolis, Indiana, Attorney for Appellee Montgomery County.

Jeffrey A. Modisett, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee/Cross Appellant Indiana Department of Transportation.

## OPINION

KIRSCH, Judge

Greta Harris and Charles and Judith Richardson appeal the trial court's summary judgment denying their negligence claims against the Indiana Department of Transportation and Montgomery County. The Department of Transportation cross-appeals the portion of the trial court's judgment rejecting its immunity defense.

The parties present the following issues,[1] which we restate:

I.   Whether the superceding cause doctrine relieves the defendants of liability as a matter of law.

II.  Whether the State is immune from suit according to section 10 of the Indiana Tort Claims Act, IC 34–13–3–3(10).

We reverse.

## FACTS AND PROCEDURAL HISTORY

This case stems from a highway collision between a semi tractor-trailer and a car driven by Jason Richardson, a high school student. The case first came before this court in 1995, on plaintiffs' appeal from the trial court's summary judgment in favor of Montgomery County. We reversed the summary judgment because of factual issues about whether the County breached its duty of care in the design, construction, and maintenance of the county road intersecting the highway. *Richardson v. Salaam*, 653 N.E.2d 136 (Ind.Ct.App.1995), *trans. denied.* Judge Hoffman dissented, maintaining that summary judgment should be granted for the County due to the intervening negligence of the semi driver.

The underlying facts are: In April 1991, Nasir Salaam was driving a semi loaded with steel on a county road toward a stop sign at a highway intersection. Richardson was approaching the same intersection on the highway. Salaam did not stop at the sign, and Richardson collided with the semi's rear axle. The semi crushed Richardson's car, dragged it across the intersection, and pulled it fifty feet up Shiloh Hill, killing Richardson and injuring his passenger, Greta Harris. An eyewitness stated that when the semi ran through the stop sign, it was traveling about fifty miles per hour.

---

1. Because we find the superceding cause issue to be dispositive, we do not reach the plaintiffs' alternate theory of premises liability.

The plaintiffs contend that the State and County are liable for the accident because of the unworkable design of the intersection. According to the plaintiffs, the intersection design forced the semi driver to run the stop sign in order to have sufficient speed to climb Shiloh Hill. The plaintiffs further contend that the State was negligent in issuing a construction permit to the County without obtaining information regarding Shiloh Hill's steep grade.

The State and the County filed summary judgment motions regarding the plaintiffs' claims, contending that: (1) they are immune from the plaintiffs' suit, and (2) the intervening negligence of the semi driver broke any chain of causation linking the plaintiffs' injuries to the design of the intersection. The trial court granted summary judgment to both defendants on the ground that the semi driver's failure to stop was a superseding cause of the accident. The summary judgment order also stated, however, that neither the State nor the County were immune from suit.

## DISCUSSION AND DECISION

### I. SUPERCEDING CAUSE

#### A. Standard of Review

■ In a summary judgment appeal, this court applies the same standard as the trial court. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App.1994), *trans. denied.* Accordingly, this court examines the designated evidence, determines whether there are any genuine issues of material fact, and decides whether the moving party is entitled to summary judgment as a matter of law. Ind. Trial Rule 56(C).

#### B. Parties' Arguments

The plaintiffs contend the trial court erred when it found that the semi driver's conduct was a superceding cause of the accident. First, the plaintiffs argue that the superceding cause doctrine which has been subsumed by the Indiana Compara-

tive Fault Act, IC 34–51–2–1 to –19, as to non-governmental defendants should be subsumed regarding governmental defendants, as well. Next, the plaintiffs argue that even if the superceding cause doctrine is viable with regard to governmental entities, application of the doctrine is a jury question that cannot be decided on summary judgment. According to the plaintiffs, there is a factual dispute in this case about whether the intersection design caused the semi driver to run the stop sign. That dispute, the plaintiffs argue, must be decided by a jury.

In response, the defendants point out that the Comparative Fault Act does not apply to governmental entities, citing IC 34–51–2–2. As such, the defendants continue, the plaintiffs' claims are governed by common law principles, including the superceding cause doctrine. The defendants acknowledge that superceding cause is ordinarily a jury question, but argue that in this case the uncontested facts indicate that the semi driver's failure to stop was a superceding cause.

#### C. Comparative Fault vs. Common Law Principles

■ The plaintiffs recognize that the Comparative Fault Act does not apply to the governmental defendants. *See Sauders v. Steuben County,* 693 N.E.2d 16, 18 (Ind.1998). The plaintiffs argue, however, that this court should apply comparative fault principles in this case so as to render the superceding cause doctrine inoperable. The plaintiffs rely upon dicta in *Sauders* in which our supreme court stated that appellate courts are free to adopt comparative fault doctrines as a matter of the common law of this state even in areas where the legislature did not apply the Comparative Fault Act. *Id.* at 20.

In *Sauders,* the court did not state the comparative fault doctrines to which it referred, and we are unable to discern any such doctrines short of the wholesale inclusion of governmental entities into our comparative fault system of loss allocation.

While we acknowledge that there may be strong policy reasons in favor of such inclusion,[2] we also acknowledge that there may be equally strong policy considerations against such inclusion.[3] Here, however, the plaintiffs fail to make a sufficient case for the inclusion of governmental entities in our comparative fault system. The Record is void of any constitutional challenge, or legal or evidentiary basis upon which to predicate the extension of comparative fault to governmental entities. While we may have the freedom to adopt comparative fault, we do not have the license to do so in the absence of a sufficient basis other than our own conceptions of what would be good policy. We therefore decline to apply comparative fault principles in this case.

### D. Validity of Summary Judgment on Superceding Cause

■ To prevail on a negligence claim, a plaintiff must prove that the defendant's conduct was the proximate cause of the injuries. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 706 (Ind.Ct.App.1999). When the causation evidence demonstrates that something has intervened between the defendant's alleged negligence and the plaintiff's injuries, the case presents a superceding cause issue. We have described the superceding cause doctrine as follows:

"Under common law, independent intervening conduct precludes the original wrongdoer's liability when the later conduct constitutes a cause interrupting the natural sequence of events, turning aside their course, preventing the natural and probable result of the original act or omission, and producing a result that could not have been reasonably anticipated."

*L.K.I Holdings, Inc. v. Tyner*, 658 N.E.2d 111, 119 (Ind.Ct.App.1995) (citing *Crull v. Platt*, 471 N.E.2d 1211 (Ind.Ct.App.1984)

*trans. denied* ). Thus, to constitute an intervening cause sufficient to preclude the original wrongdoer's liability the intervening conduct must be an independent act which interrupts the natural consequence of the events.

■ Here, the conduct of the semi driver is neither independent of the governmental defendants' allegedly negligent design, nor does it interrupt the consequences of the alleged design defect. Rather, the conduct of the semi driver in proceeding through the stop sign is the very act which plaintiffs allege is the natural consequence of defendants' negligence. Thus, this case does not present an issue of intervening cause at all. Rather, the issue presented is whether the plaintiffs' losses were proximately caused by the defendants' negligence.

The plaintiffs' expert testified that semi drivers run the stop sign at the intersection in order to maintain the speed required to traverse Shiloh Hill:

[Expert]: "I believe that there are two proximate cause of this accident. One, obviously, is the action of the truck driver in failing to stop for the stop sign as he was northbound on County Road 400 East.

Related to that is the geometric design of the roadway, which is what encourages or forces truck drivers to take that action because of the extremely steep grade on the north side of the intersection.

It's not unusual at all for truck drivers to run that stop sign and take their chances crossing 136. In the 45 minutes I was there, I saw it happen twice.

[Counsel]: By 'run,' you mean at speed?

[Expert]: At speed or maybe some reduced speed, but certainly not stopping and yielding to the right of way."

---

**2.** For example, it may be argued that the apportionment of liability commensurate with fault is fairer, simpler, and avoids the harsh consequences of a winner-take-all system based on contributory negligence.

**3.** For example, there may be concern over the fiscal consequences of such inclusion.

*Record* at 259. Another of the plaintiffs' experts stated in his affidavit:

> "5. The design of the grade of Nucor Road on the north side of U.S. 136 is unreasonably and unnecessarily steep for semi-tractor trailer traffic hauling steel northbound from the Nucor manufacturing facility toward Indiana State Road 32 . . .
>
> 6. Reasonable engineering principles and design standards require that the circumstances anticipated at each particular location should be taken into account in the design process. The extremely steep grade to the north is not a reasonable design to safely accommodate the truck traffic for which Nucor Road was built and, therefore, poses a hazard to such traffic and to all interjecting traffic.
>
> 7. The excessively steep grade could have been substantially reduced by utilizing reasonable design principles while still utilizing the same routing.
>
> . . . .
>
> 9. Because of the defective design, it was reasonably foreseeable that southbound truck traffic would be unable to stop safely, and that northbound truck traffic might fail to fully stop for the U.S. 136 priority highway.
>
> 10. It is my opinion that because of such negligent design, it is and was foreseeable that truck traffic would fail to stop for signs and would cross U.S. 136 northbound at speed in order to pull the hill."

*Plaintiffs' Supplemental Record* at 5.[4]

A trier of fact could determine from this evidence that the defendants knew or should have known of the difficulties a steep grade would present to commercial traffic. The trier of fact would then be required to determine whether negligent design, construction or maintenance prevented fully loaded semis from using the intersection safely.

Given these potential inferences from the Record, it is incorrect to state as a matter of law that the semi driver's conduct was unforeseeable. In this case the plaintiffs have presented sufficient evidence to raise a question of fact as to whether the design, construction or maintenance of the intersection was the proximate cause of the plaintiffs' injuries. The proximate causation determination is for the trier of fact and is not appropriate for summary judgment.[5]

## II. Immunity

### A. Parties' Arguments

The trial court determined that neither the County nor the State is immune from liability. The County does not appeal that determination. The State, however, appeals the immunity decision, contending that the trial court misapplied section 10 of the Indiana Tort Claims Act.

The plaintiffs respond that the section does not shield the State from liability, because the State failed to adhere to existing regulations governing reconstruction permit applications. In addition, the plaintiffs contend that the State's liability extends past the permit process, to include liability for failure to construct, maintain, and repair a safe highway.

### B. Application of the Tort Claims Act

■ Governmental entities can be liable for tortious conduct unless the conduct is within an immunity granted in the Tort Claims Act, IC 34–13–3–3. *See Flynn v. Indiana Bureau of Motor Vehicles,* 716

---

**4.** This case has two supplemental records, one filed by the plaintiffs and one filed by the defendant County. For clarity, we identify the supplemental records according to the filing party.

**5.** The dissent cites Charles Dickens' *Oliver Twist.* We believe that Dickens makes better literature than jurisprudence and that his relevance to the question of whether the opinions of two expert witnesses present a material question of fact regarding the issue of proximate cause is on the same level as the currency of his grammar.

N.E.2d 988, 990 (Ind.Ct.App.1999), *trans. denied.* Here, the parties' dispute turns on whether section 10 of the Act provides immunity to the State for issuing the permit that authorized reconstruction of the Shiloh Hill intersection.

Section 10 reads:

"A governmental entity . . . is not liable if a loss results from:

. . . .

(10) the issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law."

IC 34–13–3–3(10). This court analyzed section 10 in *Flynn*, 716 N.E.2d 988 (Ind. Ct.App.1999). In *Flynn*, the plaintiff purchased a car not knowing that the car had been stolen. The BMV issued a certificate of title to the plaintiff. The State police confiscated the car from the plaintiff, and the plaintiff in turn sued the BMV for negligently issuing a certificate of title on a stolen car. The BMV sought section 10 immunity. The plaintiff argued that section 10 was inapplicable because the BMV's issuance of a title was not a discretionary act.

To resolve the immunity issue, we examined the BMV's enabling statute, which read, "If the bureau is satisfied that the person applying for a certificate of title is the owner of the vehicle . . . the bureau *ma* y issue an appropriate certificate of title." IC 9–17–2–10 (emphasis added). *See Flynn*, 716 N.E.2d at 991. We held that the legislature's use of the term "may" in the enabling statute indicated that the BMV's authority to issue titles is discretionary. The plaintiff argued that other statutory sections imposed restrictions on the BMV's discretion, and that as such section 10 did not provide immunity. We rejected that argument on the ground that none of the referenced restrictions removed the BMV's discretion to issue or deny certificates of title. *Flynn*, 716 N.E.2d at 992.

As the *Flynn* opinion demonstrates, a section 10 analysis requires an examination of the statutes and regulations governing the permit or license in question. This examination is the distinguishing factor between the general section 6 "discretionary function" immunity and the more specific section 10 immunity. Section 10 immunity applies when the issuance of a permit is "discretionary *under the law.*" IC 34–13–3–3 (emphasis added). To determine whether the State has discretion under the law in this case, we must determine whether the enabling statutes or applicable regulations authorize state officials to make choices as to whether to grant or deny construction permits. If the state officials have authority to place restrictions on construction or to require modifications before granting permits, their authority is discretionary and is protected from suit by section 10 of the Tort Claims Act.

Here, as in *Flynn*, the controlling regulations give state officials authority to grant or deny permits. The discretionary aspect of the permitting process is unambiguous:

"[t]he Indiana department of highways is authorized to determine and establish such requirements and restrictions for driveway approaches as may be necessary for . . . the safety and convenience of traffic on the highway. A written permit application shall be considered by the department, and, *if in accordance with properly established regulations and requirements, a permit shall be granted subject to appropriate conditions and provisions.*"

105 IAC 7–1–1 (1992) (emphasis added). The regulation grants the State the authority to deny a permit application if it does not comply with established regulations, and to place conditions on permit approval. This regulation places the permitting process within the State's discretionary authority, and as such entitles the

State to immunity for claims arising out of the permitting process.

The plaintiffs argue that the State has no immunity because it failed to comply with a regulation mandating review of the proposed slope of Shiloh Hill. Further, at oral argument, the plaintiffs' counsel argued that our supreme court's recent decisions have limited the scope of immunity. Both of these arguments fail, because they are directed at common law or discretionary function immunity, rather than section 10 immunity. In *Benton v. City of Oakland*, 721 N.E.2d 224 (Ind.1999) and *Serviss v. State*, 721 N.E.2d 234 (Ind.1999) our supreme court explained that the State has broad liability in tort and that the common law exceptions to liability are extremely narrow. The court expressly stated, however, that the common law "does not relax any of the extensive protections from liability afforded Indiana governmental units by statute." *Benton*, 721 N.E.2d at 227–28. Similarly, the protections afforded in the section 6 "discretionary function" immunity neither relax nor control the protection of the permitting process addressed in section 10 immunity. We find that section 10 provides immunity for the State's issuance of the permit at issue in this case.

Reversed.

MATTINGLY, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

BAKER, Judge, concurring in part and dissenting in part

While I fully concur with the majority's holding that section 10 of the Tort Claims Act provides immunity for the State's issuance of the permit, I cannot agree with its finding that there is a genuine question of fact as to whether the design, construction or maintenance of the intersection was the proximate cause of the plaintiffs' injuries. In my view, the proximate cause of the plaintiffs' injuries was the semi driver's intentional act of blowing through the stop sign and crossing the highway at a rate of approximately fifty miles per hour. As a matter of law, I believe that such recklessness was not a natural and probable consequence of the intersection's design. *See City of Portage v. Lindbloom*, 655 N.E.2d 84, 86 (Ind.Ct.App.1995) ("A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated."), *trans. denied.* Specifically, I note that the plaintiffs conceded at oral argument that coming to a complete stop, as required by any stop sign, would not prevent a semi driver from traversing Shiloh Hill but would only cause an exceedingly slow ascent. Despite the tediousness of the climb, the defendants could not have reasonably foreseen that a semi driver would choose to risk lives in order to reach the top faster. To find a question of fact in the instant case would only lend support to the oft-quoted passage from Charles Dickens' *Oliver Twist:* "If the law supposes that ... the law is a ass, a idiot." I do not believe the law to be such and, thus, would find as a matter of law that the driver's act proximately caused this tragedy.