**DBC CAPITAL FUND, INC.,**
**Defendant–Appellant,**

v.

**Cheryl SNODGRASS, Plaintiff–Appellee.**

**No. 82A01–8911–CV–454.**

Court of Appeals of Indiana,
First District.

March 20, 1990.

David V. Miller, Thomas A. Massey,
Bowers, Harrison, Kent & Miller, Evansville, for defendant-appellant.

James E. Rode, Evansville, for plaintiff-appellee.

RATLIFF, Chief Judge.

### STATEMENT OF THE CASE

DBC Capital Fund, Inc. (DBC) appeals the decision of the trial court finding Cheryl Snodgrass (Snodgrass) to be a buyer in the ordinary course of business of a certain 1984 Oldsmobile, and ordering DBC to deliver to Snodgrass the certificate of title to the 1984 Oldsmobile. In addition, DBC appeals the trial court's award to Snodgrass of $1,920 in triple damages and $1,784.45 in attorney's fees. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

### FACTS

On February 19, 1988, DBC entered into an agreement with the owner of Devers Auto Sales (Devers) whereby DBC obtained a security interest in the automobile inventory maintained by Devers. This security interest was perfected by filing with the Secretary of State on February 25, 1988.

On March 24, 1989, Cheryl Snodgrass purchased a 1984 Oldsmobile from Devers for $5,000 in cash. This automobile was taken from the inventory covered by DBC's security interest, although Snodgrass was not made aware of the financing agreement between Devers and DBC. When Snodgrass took possession of the Oldsmobile, Devers told her that the automobile's certificate of title would be mailed to her. In the meantime, she was issued a temporary registration.

On April 28, 1989, Snodgrass was informed by letter that DBC had physical possession of the certificate of title for the Oldsmobile and that DBC considered itself

to have a valid lien on the automobile. In a later telephone conversation, DBC's attorney informed Snodgrass that DBC would not release the certificate of title to the 1984 Oldsmobile until Snodgrass paid DBC $4,200.

On April 25, 1989, the temporary registration issued to Snodgrass by Devers expired. Because Snodgrass was not in possession of the certificate of title for the Oldsmobile, she was unable to obtain proper licensing for the vehicle and, therefore, could not use the automobile. In an effort to obtain possession of the certificate of title to the Oldsmobile, Snodgrass filed a complaint for replevin and damages on May 12, 1989. After a hearing on the evidence, the trial court entered judgment in favor of Snodgrass on June 28, 1989.

## ISSUES

1. Did the trial court err in determining that Snodgrass was a buyer in the ordinary course of business of the 1984 Oldsmobile and therefore entitled to possession of the automobile's certificate of title?

2. Did the trial court err in awarding Snodgrass triple damages and attorney's fees?

## DISCUSSION AND DECISION

*Issue One*

We first note that special findings were entered by the trial court in this action pursuant to a joint motion by the parties. *See* Ind.Trial Rule 52. In reviewing a case in which the trial court has rendered findings pursuant to TR 52, this court looks solely to the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom, to determine whether the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *Naderman v. Smith* (1987), Ind. App., 512 N.E.2d 425, 430. The trial

court's judgment will be set aside only if clearly erroneous. *Id.* The judgment is clearly erroneous when unsupported by conclusions of law, conclusions of law are erroneous when unsupported by findings of fact, and findings of fact are erroneous when unsupported by any evidence, or inferences drawn therefrom, in the record. *Donovan v. Ivy Knoll Apartments Partnership* (1989), Ind.App., 537 N.E.2d 47, 50. However, in the present case Snodgrass does not challenge the findings of fact pertaining to the first issue. Therefore, this court will not look to the evidence, but only to the findings to determine whether the judgment is contrary to law. *Boyer v. First National Bank* (1985), Ind.App., 476 N.E.2d 895, 897.

■ DBC first contends that the trial court erred in determining that Snodgrass was a buyer in the ordinary course of business, and that, therefore, the trial court erred in failing to recognize that, as the holder of a valid secured interest, DBC was entitled to possession of the certificate of title to the 1984 Oldsmobile. We disagree.

At the final hearing the parties to the present case stipulated to the fact that DBC had a valid security interest in the 1984 Oldsmobile. The main issue litigated at trial was whether or not Snodgrass was in a legal position which would make her claim to the automobile superior to that of DBC. Under the relevant provision of the Uniform Commercial Code (UCC) the interest of a "buyer in the ordinary course of business" is superior to that of a holder of a valid secured interest. IND.CODE § 26-1-9-307(1). DBC claims that Snodgrass cannot be considered a buyer in the ordinary course of business because she "fail[ed] to require delivery of the title at the time of purchase." Appellant's Brief at 11. According to DBC Snodgrass was charged with knowledge of IND.CODE § 9-1-2-2(a)[1] and 9-1-2-3(b)[2] which made

---

1. "(a) In the event of the sale or transfer of ownership of such vehicle, for which an original certificate of title has been issued heretofore, the original holder of such certificate shall endorse on the back of the same an assignment thereof, with warranty of title, in a form printed thereon, with a statement of all liens or encumbrances on such vehicle, and deliver the same to the purchaser or transferee at the time of the sale or delivery to him of such vehicle. The failure of the seller to deliver to the purchaser, at the time such vehicle is sold or delivered, a

2. Footnote on page 477.

it unlawful for Devers to fail to deliver a certificate of title at the time of purchase. Because Devers failed to tender the certificate of title at the time of sale, Snodgrass knew or should have known that the sale of the 1984 Oldsmobile was in violation of the ownership rights of a third party. DBC concludes that because Snodgrass was not a buyer in the ordinary course of business, Snodgrass cannot defeat DBC's valid secured interest.

It is true that if there are grounds for suspecting that a security interest is being imperiled by the mode of dealing, a transaction cannot be considered in the ordinary course of business. *Foy v. First National Bank of Elkhart* (7th Cir.1989), 868 F.2d 251, 256. However, we conclude that DBC has failed to prove that the mode of dealing in the present case was grounds for such a suspicion. DBC's analysis is flawed in that it rests on the supposition that IC 9–1–2–2(a) and 9–1–2–3(b) were enacted to protect the interests of secured creditors. Such simply is not the case. The plain purpose for enacting these statutes was to impede the trade in stolen vehicles. As stated by Judge Posner of the United States Court of Appeals, "as the statute is intended to pro-

tect purchasers ... rather than lenders, there would be considerable paradox in interpreting the statute to defeat [the purchaser's] ownership." *Foy*, 868 F.2d at 257. Therefore, we reject DBC's contention that IC 9–1–2–2(a) and 9–1–2–3(b) create a duty on behalf of a purchaser to demand delivery of the certificate of title to an automobile at the time of sale.

Absent such a duty and the alleged breach of that duty, nothing in the evidence suggests that Snodgrass' purchase of the 1984 Oldsmobile was outside the ordinary course of business. Therefore, under the provisions of IC 26–1–9–307(1), as a buyer in the ordinary course of business, Snodgrass took free of the security interest held by DBC. The trial court did not err in determining that Snodgrass was entitled to the certificate of title to the 1984 Oldsmobile.

*Issue Two*

■ DBC next argues that the trial court erred in finding that DBC's actions in the present case constituted conversion and justified an award of triple damages, attorney's fees, and costs pursuant to IND.

---

proper certificate of title with an assignment thereof in the form prescribed by the commissioner or in the form approved by him, if the title has been acquired or registered in any state other than Indiana, is a Class B misdemeanor. The original certificate of title together with all assignments thereof, and any subsequent reissues thereof, shall be retained by the department, and appropriately classified and indexed, in such a manner as is most convenient to trace title to such vehicle described therein."

**2.** "(b) Every manufacturer, converter manufacturer, or dealer shall have a proper certificate of title, or a properly assigned certificate of title, or a proper manufacturer's certificate of origin for each motor vehicle, semitrailer, or recreational vehicle in his possession. In all cases wherein the dealer acquires ownership of a motor vehicle, semitrailer, or a recreational vehicle in a state that does not have a certificate of title law, such dealer shall be required to make application for Indiana certificate of title for such vehicle within five (5) days from the date of purchase of vehicle. The commissioner shall collect a delinquent title fee as provided in this chapter, in case a dealer fails to make application for certificate of title for such vehicle so required in a state which does not have a certifi-

cate of title law, within five (5) days from the date such vehicle is purchased or otherwise acquired by such dealer. The commissioner shall provide the forms on which applications for such certificates of title and assignments thereof, shall be made, if forms, differing from those used in case of individuals, are, in his judgment, reasonably necessary. It shall be unlawful for any manufacturer, converter manufacturer, or dealer to fail or refuse to deliver a properly assigned certificate of title or certificate of origin to any person entitled thereto. Any manufacturer or dealer who is licensed as such by the department shall, as a prerequisite to the issuance of such manufacturer's, converter manufacturer's, or dealer's license, agree and consent that any police officer or authorized representative of the department shall be permitted to inspect all certificates of origin, certificates of title or proper assignments thereof, and any or all motor vehicles, semitrailers, or recreational vehicles in such manufacturer's, converter manufacturer's, or dealer's place of business which are held for resale by such manufacturer, converter manufacturer, or dealer during reasonable business hours. Such certificate shall at all times be readily available for inspection or delivery to the proper persons, and shall in no event be removed from Indiana."

CODE § 34-4-30-1. We agree that such an award was erroneous.

The trial court awarded Snodgrass triple damages, attorney's fees, and costs pursuant to IC 34-4-30-1 which reads in pertinent part as follows: "If a person suffers a pecuniary loss as a result of IC 35-43, IC 35-42-3-3, or IC 35-42-3-4, the person may bring a civil action against the person who caused the loss for the following: (1) An amount not to exceed three (3) times the person's actual damages. (2) The costs of the action. (3) A reasonable attorney's fees." In a civil action brought pursuant to IC 34-4-30-1, the elements necessary to establish conversion of property are found in the criminal conversion statute. *Lambert v. Yellowbird, Inc.* (1986), Ind.App., 496 N.E.2d 406, 410, *reh. denied* 498 N.E.2d 80.; *and see James v. Brink and Erb, Inc.* (1983), Ind.App., 452 N.E.2d 414, 416. The criminal conversion statute is codified at IND.CODE § 35-43-4-3 and reads as follows: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." Thus in order to recover triple damages, attorney's fees, and costs, Snodgrass was required to demonstrate by a preponderance of the evidence that DBC knowingly and intentionally exerted unauthorized control over the certificate of title to the 1984 Oldsmobile. *See Obremski v. Henderson* (1986), Ind., 497 N.E.2d 909, 911 (setting forth the preponderance of the evidence standard to be employed in proving the right to triple damages.)

As stated previously in this opinion, a judgment will be set aside only if clearly erroneous. *Naderman,* 512 N.E.2d at 430. The judgment is clearly erroneous when unsupported by conclusions of law, conclusions of law are erroneous when unsupported by findings of fact and findings of fact are erroneous when unsupported by any evidence, or inferences to be drawn therefrom, in the record. *Donovan,* 537 N.E.2d at 50. Unlike the previous issue, DBC does claim that certain findings pertaining to the present issue are erroneous. Therefore, this court must review the record to determine whether or not the contested findings are supported by the record.

In the present case, the trial court found that "DBC's possession and control of the certificate of title was not authorized by Plaintiff, the owner of said vehicle as of March 24, 1989." Record at 63. The trial court also included the following statement in its findings of fact: "The conduct of DBC amounted to conversion within the meaning of I.C. 34-4-30-1." Record at 63. Such a statement is more properly characterized as a conclusion of law. In any case, the trial court's holding that DBC's actions constituted conversion is simply not supported by sufficient findings. While the trial court did find that DBC's possession of the certificate of title was unauthorized, at no time did the trial court find that DBC *knowingly* or *intentionally* exerted this unauthorized control. Moreover, the evidence presented at trial would not have supported such a finding of fact. DBC consistently claimed that it held the certificate of title as a matter of right. Snodgrass presented no evidence other than mere possession to demonstrate that DBC had the requisite mens rea for a violation of the conversion statute. Because the record and findings do not support the conclusion that DBC committed conversion, we cannot uphold the trial court's award of triple damages, attorney's fees, and costs. We therefore remand this case to the trial court to correct the judgment in accordance with our holding herein.

Affirmed in part, reversed in part and remanded with instructions.

HOFFMAN, P.J., and BAKER, J., concur.