Donald E. MARLOW, Appellant–
Plaintiff,

v.

Herchel Ray CONLEY a/k/a Henderson
Conley, Linda L. Medley and Robert
Lee Medley, Appellees–Defendants.

No. 30A01–0209–CV–352.

Court of Appeals of Indiana.

May 7, 2003.

E. Franco Upano, Indianapolis, IN, Attorney for Appellant.

Donald E. Snow, Greenfield, IN, Attorney for Appellees.

## OPINION

SHARPNACK, Judge.

Donald E. Marlow appeals the trial court's judgment in favor of Robert L. Medley and Linda L. Medley (collectively, the "Medleys") on Marlow's complaint for replevin and the trial court's denial of Marlow's motion to correct error. Marlow raises two issues, which we consolidate and restate as whether the Medleys obtained good title to a truck pursuant to Ind.Code § 26–1–2–403(1). We affirm.[1]

---

1. We direct Marlow's attention to Ind. Appellate Rule 46(A)(10), which requires the appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal." Marlow did not include a copy of the trial court's order in his appellant's brief. Marlow also failed to file an

The relevant facts follow. On May 21, 2000, Robert Medley attended a car show in Indianapolis. Herchel Ray Conley, also known as Henderson Conley, attended the same car show and was trying to sell a 1932 Ford Truck ("Truck"). Conley told Robert that he operated a "buy here, pay here car lot," and Robert saw that the Truck had a dealer license plate. Transcript at 41. Robert purchased the Truck for $7,500.00 as a gift for Linda. Conley gave Robert the Truck's certificate of title, which listed the owner as Donald Marlow. When Robert questioned Conley about the owner of the Truck, Conley responded that Marlow had signed the title as part of a deal Conley had made with him. After purchasing the Truck, Robert applied to the Bureau of Motor Vehicles for a certificate of title in Linda's name.

On December 18, 2000, Marlow filed a complaint against Conley and the Medleys. Marlow later filed an amended complaint for replevin of the Truck. At the bench trial, Marlow testified that he had met Conley at a car show in Indianapolis on May 19, 2000, and Conley had told him that Conley owed a "car lot" on the west side of Indianapolis. Transcript at 15. Marlow also testified that Conley came to his house that night, but he "didn't let him in." *Id.* at 23. Rather, Marlow testified that Conley "[came] over [his] fence ... a big high fence." *Id.* According to Marlow, Conley asked him to invest in Conley's business that night. Marlow gave Conley $500.00. Marlow testified that Conley came back the next day and Marlow gave him an additional $4,000.00. Marlow then testified that Conley stole the certificate of title for the Truck from Marlow's house and stole the Truck from his garage. According to Marlow, he told Conley later in the day to bring his Truck back and Conley told him that it had caught on fire. Marlow testified that he then called the police. However, in the May 30, 2000 police report, which was admitted into evidence at trial, the police officer noted the following:

> The deal was [Conley] gets $4500.00, plus an orange '32 Ford truck. In return, [Marlow] would get a '94 Ford flatbed dump truck and an '89 Ford Bronco. [Marlow] stated that he has not received the vehicles and that [Conley] keeps delaying getting the vehicles for him. [Conley] gave [Marlow] several titles of vehicles which are believed to be junk. [Conley] told [Marlow] that he has a car lot at 16th and Lafayette Road.

Plaintiff's Exhibit 5.

After conducting a bench trial, the trial court entered the following findings of fact and conclusions thereon:

appendix with his brief. Ind. Appellate Rule 50(A) requires that an appendix contain, among other items, the chronological case summary, the appealed judgment or order, and the "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal." We were provided with the trial court's judgment only in the Statement of the Facts section of Appellee's Brief and with the Appellant's Case Summary. *See* Ind. Appellate Rule 15 (discussing the Appellant's Case Summary). Marlow did not even provide other relevant pleadings from the Clerk's Record, including the amended complaint and answer. Lastly, Marlow failed to include a "concise statement of the applicable standard of review" pursuant to Ind. Appellate Rule 46(A)(8)(b).

Furthermore, neither Marlow nor the Medleys complied with Ind. Appellate Rule 46(A)(6), which requires that the "facts shall be supported by page references to the Record on Appeal or Appendix in accordance with Rule 22(C)." Ind. Appellate Rule 22(C) provides that "[a]ny factual statement shall be supported by a citation to the page where it appears in an Appendix, and if not contained in an Appendix, to the page it appears in the Transcript or exhibits...."

1.  On Sunday May 21, 2000 while attending a car show in Indianapolis Robert Medley negotiated a purchase of an orange 1921(sic) Ford Truck with VIN # M14010207 from [Conley] as a surprise gift for his wife, Linda Medley. Upon payment of the purchase price of $7500.00 Conley gave Medley a certificate of title for the vehicle purportedly signed by [Marlow] as its owner.

2.  Medley accepted the title certificate as offered as he understood Conley to be a licensed dealer and the vehicle was displaying a dealer license plate. Medley subsequently titled the car in his wife's name consistent with his gift intentions.

3.  Conley acquired the truck from [Marlow] under less than clear circumstances. At trial [Marlow] said the truck was stolen from him along with the title following some business dealings May 19, 2000 wherein he loaned Conley $4500.00. Evidence presented concerning [Marlow's] complaint to the Indianapolis Police Department on May 30, 2000 casts doubt on the credibility of [Marlow's] trial testimony as the report states the truck and title were obtained by Conley in exchange for a 1994 Ford Flatbed Dump Truck and a 1989 Ford Bronco plus the payment of $4500.00 by [Marlow]. Apparently, [Marlow] was complaining to the police concerning Conley's failure to deliver the two Ford vehicles.

4.  [Marlow] has failed to discharge his burden of proof concerning his right to return of the 1932 Ford Truck and unlawful detention of it by the Medleys as alleged in Court II of the Amended Complaint.

5.  [Marlow] has failed to discharge his burden of proof under Counts I, III and IV against the Medleys. [Marlow] is not entitled to a judgment against Conley on Counts I–IV due to lack of jurisdiction over [Conley].

The Court therefore, Finds, Adjudges, Decrees and Orders that [Marlow] shall not recover of [the Medleys] in this cause and judgment is entered in favor of [the Medleys] and against [Marlow] on [Marlow's] Amended Complaint. Costs versus [Marlow].

Appellant's Case Summary. Marlow filed a motion to correct error, which the trial court denied.

Although the trial court issued findings of fact and conclusions thereon, it does not appear from the meager record provided to us that either party requested such findings. Sua sponte findings control only as to the issues they cover. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997). When a trial court has made findings of fact, we review the sufficiency of the evidence using a two-step process. *Id.* First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings of fact support the trial court's conclusions of law. *Id.* We will set aside the findings only if they are clearly erroneous. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* "A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id.*

In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. *Pitman v. Pitman*, 721 N.E.2d 260, 263–264 (Ind.Ct.App. 1999), *trans. denied.* Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* To make a determination that a finding or conclusion is clearly erroneous, our review of the evidence must

leave us with the firm conviction that a mistake has been made. *Yanoff,* 688 N.E.2d at 1262. On the other hand, a general judgment will control as to the issues upon which there are no findings. *Id.* "A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.*

The issue is whether the Medleys obtained good title to the Truck pursuant to Ind.Code § 26–1–2–403(1). We first note that Ind.Code § 26–1–2–401(2) (Supp. 2000), which is part of the sales provisions of the Uniform Commercial Code ("UCC"), provides that "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods...." Further, Ind.Code § 26–1–2–403(1) (Supp. 2000) provides as follows:

> A purchaser of goods acquires all title which his transferor had or had power to transfer, except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. *A person with voidable title has power to transfer a good title to a good faith purchaser for value.* When goods have been delivered under a transaction of purchase, the purchaser has such power even though:
> (a) the transferor was deceived as to the identity of the purchaser; or
> (b) the delivery was in exchange for a check which is later dishonored; or
> (c) it was agreed that the transaction was to be a "cash sale"; or
> (d) the delivery was procured through fraud punishable as theft under the criminal law.

(emphasis added). Thus, Conley, as purchaser of the goods, acquired all title to the Truck that Marlow, as transferor, had or had power to transfer, unless Conley acquired a limited interest. Additionally, even if Conley had "voidable title," he had the power to transfer good title to the Medleys if they were "good faith purchasers for value." Consequently, we must determine whether Conley had voidable title and, if so, whether the Medleys were good faith purchasers for value.

### A. Voidable Title

■ We first determine whether Conley had voidable title to the Truck. We noted in *McDonald's Chevrolet, Inc. v. Johnson,* 176 Ind.App. 399, 403, 376 N.E.2d 106, 109 (1978), that the UCC does not define "voidable title." However, we have held that Ind.Code § 26–1–2–403 is consistent with Indiana's common law, which provided that "legal title passes to a defrauding buyer. This title is not void; it is voidable, which means that when title gets into the hands of a bona fide purchaser for value then he will prevail over the defrauded seller." *Mowan v. Anweiler,* 454 N.E.2d 436, 438 (Ind.Ct.App.1983). Thus, a "defrauding buyer" obtains voidable title. However, a thief obtains void title. *See, e.g., McDonald's Chevrolet,* 176 Ind.App. at 404, 376 N.E.2d at 109 (holding that a renter who stole a motor home had void title, not voidable title, and could not convey good title).

We addressed the defrauding buyer situation in *Fryer v. Downard,* 134 Ind.App. 226, 187 N.E.2d 105 (1963). There, James Downard was the legal owner of a vehicle. *Id.* at 227, 187 N.E.2d at 106. After his death, Downard's widow sold the vehicle to Robert Gray for $2,000.00. *Id.* Gray gave the widow a check drawn upon a company account for the purchase price, obtained the unsigned certificate of title, which still listed James Downard as the record owner, and took possession of the vehicle. *Id.* at 227–228, 187 N.E.2d at 106. The widow soon discovered that Gray's company was

no longer in business, and she did not receive payment for the vehicle. *Id.* at 228, 187 N.E.2d at 106. Gray forged James Downard's signature on the certificate of title and sold the vehicle to a car dealership. *Id.* at 228, 187 N.E.2d at 106. The dealership sold the car to Richard Fryer. *Id.* at 228, 187 N.E.2d at 107.

Downard's widow filed a complaint against Fryer for replevin. *Id.* at 227, 187 N.E.2d at 106. The trial court entered judgment for the widow. *Id.* The Uniform Sales Act was in effect at that time and provided that "[w]here the seller of goods has a voidable title thereto, but this title has not been avoided at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title." *Id.* at 230, 187 N.E.2d at 107. We reversed, holding that despite the widow's failure to sign the certificate of title, she "exhibited a clear intention to sell." *Id.* at 230, 187 N.E.2d at 108. Consequently, Fryer, a bona fide purchaser for value, prevailed over the widow, a defrauded seller.

Here, Marlow argues that Conley stole the Truck and forged his name on the certificate of title. However, the trial court was presented with conflicting evidence regarding whether Conley stole the Truck and the certificate of title or whether Conley and Marlow had a business deal and Conley failed to comply with the agreement. The trial court found that:

> Evidence presented concerning [Marlow's] complaint to the Indianapolis Police Department on May 30, 2000 casts doubt on the credibility of [Marlow's] trial testimony as the report states the truck and title were obtained by Conley in exchange for a 1994 Ford Flatbed Dump Truck and a 1989 Ford Bronco plus the payment of $4500.00 by [Marlow]. Apparently, [Marlow] was com-

plaining to the police concerning Conley's failure to deliver the two Ford vehicles.

Appellant's Case Summary. As a result, the trial court found that "[Marlow] has failed to discharge his burden of proof concerning his right to return of the 1932 Ford Truck and unlawful detention of it by the Medleys...." *Id.*

Our standard of review does not permit us to reweigh the evidence or judge Marlow's credibility. The trial court did not find Marlow's testimony regarding the theft of the Truck and the certificate of title to be credible. We must consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Consequently, we assume that Conley did not steal the Truck or the certificate of title from Marlow. Rather, based upon the trial court's findings of fact, we must assume that the police report accurately describes the circumstances under which Conley obtained possession of the Truck and its signed certificate of title. Consequently, we assume that Marlow gave Conley $4,500.00 and the Truck in exchange for two other vehicles. Although Conley gave Marlow the certificates of title for the two vehicles, he never delivered the vehicles.

Conley's title is voidable if "the delivery was procured through fraud punishable as theft under the criminal law" under Ind. Code § 26–1–2–403(1)(d). Ind.Code § 35–43–4–2(a) (1998) provides that: "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." A person's control over property of another person is "unauthorized" if it is exerted "by creating or confirming a false impression in the other person" or "by promising performance that the person knows will not

be performed." Ind.Code § 35–43–4–1(b) (1998). Assuming that Conley knew that he would not deliver the two vehicles to Marlow, the delivery of the Truck to Conley was procured through fraud punishable as theft. Consequently, Marlow was defrauded, and Conley obtained voidable title to the Truck. *See, e.g., Fryer,* 134 Ind. App. at 230, 187 N.E.2d at 107–108. Because Conley obtained voidable title to the Truck, he had the power to transfer good title to a good faith purchaser for value. I.C. § 26–1–2–403(1).

B. Good Faith Purchasers for Value

■ Having determined that Conley obtained voidable title to the Truck, we must now determine whether the Medleys were good faith purchasers for value. Marlow does not dispute that the Medleys were purchasers for value. Rather, Marlow questions their "good faith" because they purchased the Truck from someone other than the person listed on the Truck's certificate of title. Ind.Code § 26–1–1–201(19) (Supp.2000) defines good faith as "honesty in fact in the conduct or transaction concerned." Marlow argues that Robert did not purchase the Truck in good faith because, although Robert purchased the vehicle from Conley, he was aware that the certificate of title was signed by Marlow.

In support of his argument, Marlow relies upon Indiana's Certificate of Title Act. Specifically, Marlow argues that the transaction violated Ind.Code § 9–17–3–3 (1998), which provides that:

(a) If a vehicle for which a certificate of title has been issued is sold or has the ownership transferred, the person who holds the certificate of title must do the following:

(1) Endorse on the certificate of title an assignment of the certificate of title with warranty of title, in a form printed on the certificate of title, with a statement describing all liens or encumbrances on the vehicle.

(2) Except as provided in subdivisions (3) and (4), deliver the certificate of title to the purchaser or transferee at the time of the sale or delivery to the purchaser or transferee of the vehicle, if the purchaser or transferee has made all agreed upon initial payments for the vehicle, including delivery of a trade-in vehicle without hidden or undisclosed statutory liens.

(3) In the case of a sale or transfer between vehicle dealers licensed by this state or another state, deliver the certificate of title within twenty-one (21) days after the date of the sale.

(4) Deliver the certificate of title to the purchaser or transferee within twenty-one (21) days after the date of sale to the purchaser or transferee of the vehicle, if all of the following conditions exist:

(A) The seller or transferor is a vehicle dealer licensed by the state under IC 9–23.

(B) The vehicle dealer is not able to deliver the certificate of title at the time of sale.

(C) The vehicle dealer reasonably believes that it will be able to deliver the title, without a lien or an encumbrance on the title, within the twenty-one (21) day period.

(D) The vehicle dealer provides the purchaser or transferee with an affidavit under section 3.1 of this chapter.

(E) The purchaser or transferee has made all agreed upon initial payments for the vehicle, including delivery of a trade-in vehicle without hidden or undisclosed statutory liens.

(b) A licensed dealer may offer for sale a vehicle for which the dealer does not possess a certificate of title, if the dealer can comply with subsection (a)(3) or (a)(4) at the time of the sale.

(c) A vehicle dealer who fails to deliver a certificate of title within the time specified under this section is subject to the following civil penalties:

(1) One hundred dollars ($100) for the first violation.

(2) Two hundred fifty dollars ($250) for the second violation.

(3) Five hundred dollars ($500) for all subsequent violations.

Payment shall be made to the bureau and deposited in the state general fund. In addition, if a purchaser or transferee does not receive a valid certificate of title within the time specified by this section, the purchaser or transferee shall have the right to return the vehicle to the vehicle dealer ten (10) days after giving the vehicle dealer written notice demanding delivery of a valid title certificate and the dealer's failure to deliver a valid title certificate within that ten (10) day period. Upon return of the vehicle to the dealer in the same or similar condition as delivered to the purchaser or transferee under this section, the vehicle dealer shall pay to the purchaser or transferee the purchase price plus sales taxes, finance expenses, insurance expenses, and any other amount paid to the dealer by the purchaser. If the dealer's inability to timely deliver a valid certificate of title results from the acts or omissions of a third party who has failed to timely deliver a valid certificate of title to the dealer, the dealer is entitled to claim against the third party all damages sustained by the dealer in rescinding the dealer's sale with the purchaser or transferee, including the dealer's reasonable attorney's fees.

Under Ind.Code § 9–17–3–3, after obtaining the Truck's certificate of title from Marlow, Conley should have transferred the certificate of title to his name and then sold the vehicle to the Medleys. As a dealer, Conley could have also delivered an appropriate title within twenty-one days by complying with the affidavit requirements of Ind.Code § 9–17–3–3(a)(4). However, Conley failed to comply with the statute and, instead, simply gave the Medleys the certificate of title that he obtained from Marlow.

We recently addressed the relationship between Indiana's Certificate of Title Act and the sales provisions of the UCC in *Madrid v. Bloomington Auto Co., Inc.*, 782 N.E.2d 386 (Ind.Ct.App.2003). There, a Lincoln dealership drove a new Lincoln Navigator to a used car dealership so that the used car dealership could show the vehicle to a customer. *Id.* at 389. Although the customer was supposed to purchase the vehicle directly from the Lincoln dealership, the used car dealer informed the customer that he had purchased the vehicle. *Id.* Thus, the customer paid the used car dealer the purchase price and the used car dealer agreed to provide the certificate of title the next day. *Id.* at 389–390. The used car dealer never provided the customer with the certificate of title because the Lincoln dealer retained possession of the certificate. *Id.*

The customer filed a complaint against the Lincoln dealer and the used car dealership requesting title to the vehicle. *Id.* at 390. The trial court granted summary judgment to the Lincoln dealer because it found that the Lincoln dealership preserved its ownership of the vehicle by retaining the certificate of origin pursuant to the Indiana Certificate of Title Act. *Id.* We reversed, holding that legal title to a vehi-

cle is governed by the sales provisions of the UCC rather than the Indiana Certificate of Title Act. *Id.* at 395.

Further, we held that the customer received legal title to the vehicle under the entrustment provisions of Ind.Code § 26–1–2–403.[2] *Id.* at 397. In so holding, we relied upon *DBC Capital Fund, Inc. v. Snodgrass,* where we observed that "[i]t is true that if there are grounds for suspecting that a security interest is being imperiled by the mode of dealing, a transaction cannot be considered in the ordinary course of business." 551 N.E.2d 475, 477 (Ind.Ct.App.1990). However, in *DBC Capital Fund,* we held that the prior Certificate of Title Act did not create a duty on behalf of a purchaser to demand delivery of the certificate of title to an automobile at the time of sale. *Id.* Absent such a duty, nothing in the evidence in *DBC Capital Fund* suggested that the purchaser was not a buyer in the ordinary course of business pursuant to the secured transaction provisions of the UCC. *Id.* In *Madrid,* relying upon *DBC Capital Fund,* we found that despite the used car dealer's failure to comply with the Certificate of Title Act by failing to provide the customer with a certificate of title, the customer obtained legal title to the vehicle. *Madrid,* 782 N.E.2d at 397.

Here, the sole evidence presented by Marlow regarding the Medleys' lack of good faith is the fact that the certificate of title provided by Conley was signed by Marlow. Robert testified that he thought Conley was a licensed dealer and operated

a "buy here, pay here car lot." Transcript at 41. The Truck had a dealer license plate. Robert questioned Conley about the certificate of title. Conley explained that Marlow had signed the title as part of a deal Conley had made with him. Robert also testified that he had previously purchased vehicles at car shows and had previously purchased a vehicle from a dealer where the certificate of title had the previous owner's name on it.

Although *Madrid* and *DBC Capital Fund* dealt with the entrustment provisions of Ind.Code § 26–1–2–403 and the buyer in the ordinary course of business provisions of Ind.Code § 26–1–9.1,[3] respectively, the treatment of the Indiana Certificate of Title Act in those decisions is instructive. The Medleys' failure to demand a certificate of title complying with Ind. Code § 9–17–3–3 does not affect their status as good faith purchasers in this case. Ind.Code § 9–17–3–3(c) specifically provides that dealers who violate the statute are subject to civil penalties. The statute does not void transactions that violate the statute. *See, e.g., Royal Indem. Ins. Co. v. Shue,* 134 Ind.App. 322, 327, 182 N.E.2d 796, 799 (1962) ("Failure to strictly comply with title conveyancing statutes does not affect transfer of ownership of a motor vehicle. The certificate of title is not of itself proof of ownership or legal title to the vehicle.") Although the failure to comply with Ind.Code § 9–17–3–3 may, combined with other suspicious circumstances, raise questions about a purchaser's good

---

2. Ind.Code § 26–1–2–403(2) and Ind.Code § 26–1–2–403(3) provide that:

(2) Any entrusting of possession of goods to a merchant who deals in goods· of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be theft under the criminal law.

3. Formerly Ind.Code § 26–1–9–101, –508 (repealed by P.L.57–2000, § 48).

faith, we find no such circumstances here. Consequently, the Medleys were good faith purchasers for value pursuant to Ind. Code § 26–1–2–403. *See, e.g., DBC Capital Fund,* 551 N.E.2d at 477 (holding that a purchaser of a vehicle was a buyer in the ordinary course of business even though the car dealer did not provide the certificate of title at the time of the sale).

■ Lastly, Marlow also argues that the Medleys violated Ind.Code § 9–17–2–2[4] and Ind.Code § 9–17–2–3[5] by providing false information to the Bureau of Motor Vehicles because the Medleys allegedly listed the seller of the Truck as Marlow rather than Conley. We noted above that legal title to a vehicle is governed by the sales provisions of the UCC rather than the Indiana Certificate of Title Act. *See Madrid,* 782 N.E.2d at 395. Thus, although false statements to the Bureau of Motor Vehicles under Ind.Code § 9–17–2–2 could result in prosecution for perjury, such false statements do not affect legal title to the vehicle.

In summary, we conclude that, as a defrauding buyer, Conley possessed voidable title and transferred good title to the Medleys as good faith purchasers for value. *See* I.C. § 26–1–2–403(1) ("A person with voidable title has power to transfer a good title to a good faith purchaser for value."). Thus, legal title to the Truck passed to the Medleys at the time Conley delivered the Truck to them. *See* I.C. § 26–1–2–401(2) ("[T]itle passes to the buyer at the time and place at which the seller completes his

performance with reference to the physical delivery of the goods. . . ."). This result is consistent with the policy behind Ind.Code § 26–1–2–403.

> Section 2–403 was intended to determine the priorities between the two innocent parties: (1) the original owner who parts with his goods through fraudulent conduct of another and (2) an innocent third party who gives value for the goods to the perpetrator of the fraud without knowledge of the fraud. By favoring the innocent third party, the Uniform Commercial Code endeavors to promote the flow of commerce by placing the burden of ascertaining and preventing fraudulent transactions on the one in the best position to prevent them, the original seller.

*Mowan,* 454 N.E.2d at 439; *see also First Nat'l Bank of Mishawaka v. Assoc. Inv. Co.,* 140 Ind.App. 394, 397, 221 N.E.2d 684, 686 (1966) ("It is well settled that, where a person by his own acts makes it possible for a vendee of personal property to sell the property to a bona fide purchaser for value without notice, the original owner and seller may not recover the property from such bona fide purchaser."). The policy behind the UCC is to favor the Medleys because, as between the Medleys and Marlow, Marlow was in the best position to prevent the fraudulent transaction. The trial court's judgment for the Medleys on Marlow's complaint for replevin is not clearly erroneous. *See, e.g., Fryer,* 134 Ind.App. at 230, 187 N.E.2d at 108 (revers-

---

4. Ind.Code § 9–17–2–2 (1998) provides that "[a] person applying for a certificate of title for a vehicle must submit an application on a form furnished by the bureau that contains the following information: (1) A full description of the vehicle; (2) A statement of the person's title and of any lien or encumbrance on the vehicle; (3) Other information the bureau requires."

5. Ind.Code § 9–17–2–3 (1998) provides that "(a) The form described under section 2 of this chapter must include the following printed statement: "I swear or affirm that the information I have entered on this form is correct. I understand that making a false statement on this form may constitute the crime of perjury."; (b) The person applying for the certificate of title must sign the form directly below the printed statement."

ing the trial court's judgment for a defrauded owner in a replevin action).

For the foregoing reasons, we affirm the trial court's judgment for the Medleys.

Affirmed.

SULLIVAN and KIRSCH, JJ. concur: