# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**GREGORY W. BLACK**
The Black Law Office
Plainfield, Indiana

ATTORNEYS FOR APPELLEE,
Indiana Bureau of Motor Vehicles:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE,
Donald Gindelberger:

**NORMAN L. BURGGRAF, JR.,**
Elkhart, Indiana

FILED

Dec 28 2012, 9:48 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JAMES M. BRINKLEY, <br> STEPHANIE L. BRINKLEY, <br><br>    Appellants-Plaintiffs, <br><br>      vs. <br><br> MICHAEL HALUSKA, P.E., d/b/a <br> RETRO TECH, et al., <br><br>    Appellees-Defendants. | No. 32A01-1204-MI-181 |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-0911-MI-28

**December 28, 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

James Brinkley III and Stephanie Brinkley (collectively, the "Brinkleys") appeal the trial court's judgment for the State of Indiana by its Bureau of Motor Vehicles ("BMV") and Donald Gindelberger in their action against the BMV, Gindelberger, Michael Haluska, d/b/a Retro Tech, Retro Tech Auto Restoration, Inc., (collectively, "Haluska"), and Mechanic's Lien Plus, Inc. We affirm.

**Issues**

The Brinkleys raises several issues, which we restate as:

I.  whether the trial court properly granted summary judgment to Gindelberger because he was a bona fide purchaser for value; and

II. whether the trial court properly granted judgment on the pleadings to the BMV because the BMV was entitled to immunity.

**Facts**

In May 2005, James was issued a certificate of title for a 1965 Chevrolet Corvette. In September 2006, the Brinkleys entered into a contract with Haluska for the restoration of the vehicle for $12,500 plus parts and additional expenses. Haluska is in the automotive restoration business, not in the business of selling vehicles. The Brinkleys paid Haluska $10,317 and spent $6,000 on parts and incidentals. However, the parties eventually had a disagreement about Haluska's work and the amount of money the Brinkleys still owed. In November 2008, Haluska, who still had possession of the vehicle, threatened to file a mechanic's lien on the vehicle if the Brinkleys failed to pay

2

an additional $1,500. The parties continued arguing about the vehicle and Haluska's work.

Haluska apparently hired Mechanic's Lien Plus to file a lien on the vehicle. On July 24, 2009, Mechanic's Lien Plus sent a certified notice to James at a residence on Victoria Drive in Indianapolis, which is the address listed on the BMV's title records for the vehicle and is the address of James's father. James, however, lives at a residence on East 75th Street in Indianapolis. The notice provided that the vehicle would be sold at a public auction on August 28, 2009, if James did not recover the vehicle by paying charges of $7,400. James did not receive the notice of the sale. The certified notice was marked "return to sender, no such number, unable to forward" and was returned. App. p. 195. Mechanic's Lien Plus advertised the sale in an Indianapolis newspaper on July 25, 2009, through July 31, 2009. At the August 28, 2009 auction, Haluska purchased the vehicle for $100. However, for unknown reasons, Mechanic's Lien Plus sent a second certified notice to James at the Victoria Drive address on November 10, 2009, and James did receive this notice. The second notice stated that the vehicle would be sold at public auction on November 16, 2009, if James did not pay the charges.

On November 20, 2009, the Brinkleys filed a complaint for injunctive relief and damages against Haluska. They requested injunctive relief to bar the sale of the vehicle and to regain possession of the vehicle. On the same day, Haluska filed an application for certificate of title with the BMV regarding the vehicle. Haluska stated on the application that he purchased the vehicle on August 28, 2009, for $100. On November

3

23, 2009, the BMV issued a certificate of title to Haluska for the vehicle. Haluska was served with the Brinkleys' complaint on December 3, 2009.

Haluska then listed the vehicle for sale on eBay. Gindelberger had substantial experience on eBay and had purchased ten to fifteen other vehicles on eBay. On December 13, 2009, Gindelberger bid $25,100 on the vehicle and was the winning bidder. Gindelberger requested and received the certificate of title showing Haluska as the owner. Gindelberger did not examine the Hendricks County court records prior to purchasing the vehicle. The vehicle was delivered to Gindelberger on December 14, 2009, and Gindelberger paid Haluska.

After a December 17, 2009 preliminary hearing, the trial court granted the injunction, ordered Haluska not to transfer title or deliver a signed title to the vehicle to any third party, and ordered the BMV not to issue a new title to the vehicle until further order. On December 18, 2009, the Brinkleys filed an amended complaint, and on December 30, 2009, they filed a second amended complaint, adding claims against the BMV, eBay, and Gindelberger. The amended complaint alleged that Gindelberger was "not a bona fide purchaser for value without notice." Id. at 50. It also requested injunctive relief against the BMV to prevent the transfer of title. Gindelberger then filed a cross-claim against Haluska. On May 10, 2010, the Brinkleys filed a tort claims notice against the BMV and/or the State of Indiana.

In August 2010, the Brinkleys filed a motion for partial summary judgment against Gindelberger. In September 2010, Gindelberger filed a response to the motion for partial summary judgment and also filed a cross-motion for partial summary

4

judgment. On October 4, 2010, the Brinkleys filed a response to Gindelberger's cross-motion for partial summary judgment. The Brinkleys also filed a third amended complaint against Haluska, Retro Tech, the BMV, Gindelberger, and Mechanic's Lien Plus, in which the Brinkleys sought damages for breach, fraud, theft, and an injunction against Haluska and damages for negligence against Mechanic's Lien Plus.

On October 27, 2010, the Brinkleys filed a "Hearing Brief." Id. at 11. After an October 27, 2010 hearing on the motion for summary judgment, the trial court concluded that Indiana Code Section 26-1-2-403(2) and Indiana Code Section 26-1-2-403(3) were inapplicable because Haluska was not in the business of selling Corvettes. However, the trial court concluded that Indiana Code Section 26-1-2-403(1) was applicable because Gindelberger was a good faith purchaser for value. The trial court granted summary judgment to Gindelberger and also apparently struck the Brinkleys' Hearing Brief.

In July 2011, the BMV filed a motion for judgment on the pleadings. The BMV argued that it was entitled to immunity pursuant to Indiana Code Section 34-13-3-3. The Brinkleys filed a response, arguing that the BMV improperly issued a certificate of title to Haluska because the notice to the Brinkleys was not proper or timely. After a hearing, the trial court granted the BMV's motion for judgment on the pleadings.

In February 2012, a bench trial was held with the remaining parties, and the trial court entered judgment in favor of the Brinkleys and against Haluska, Retro Tech, and Mechanic's Lien Plus. On March 1, 2012, the Brinkleys filed a motion to correct error regarding the summary judgment for Gindelberger and the judgment on the pleadings for the BMV, which the trial court denied. The Brinkleys now appeal.

**Analysis**

***I. Claim against Gindelberger***

The Brinkleys argue that the trial court improperly granted summary judgment to Gindelberger because he was not a good faith purchaser for value. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56. We liberally construe all designated evidentiary material in a light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. <u>Bradshaw v. Chandler</u>, 916 N.E.2d 163, 166 (Ind. 2009). The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. <u>Id.</u> Our review of a summary judgment motion is limited to those materials designated to the trial court. <u>Mangold v. Ind. Dep't of Natural Res.</u>, 756 N.E.2d 970, 973 (Ind. 2001).

Legal title to a vehicle is governed by the sales provisions of the Uniform Commercial Code ("UCC") rather than the Indiana Certificate of Title Act. <u>Marlow v. Conley</u>, 787 N.E.2d 490, 496-97 (Ind. Ct. App. 2003). Thus, the issue is whether Gindelberger obtained good title to the vehicle from Haluska pursuant to Indiana Code Section 26-1-2-403(1), which provides:

> A purchaser of goods acquires all title which the purchaser's transferor had or had power to transfer, except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though:

6

(a) the transferor was deceived as to the identity of the purchaser; or

(b) the delivery was in exchange for a check which is later dishonored; or

(c) it was agreed that the transaction was to be a "cash sale"; or

(d) the delivery was procured through fraud punishable as theft under the criminal law.

We noted in Marlow, 787 N.E.2d at 493, that, under Indiana Code Section 26-1-2-403(1), a defrauding buyer obtains voidable title and has the power to transfer good title to a good faith purchaser for value. The Brinkleys do not dispute that Haluska had voidable, rather than void, title. Their only argument is that Gindelberger was not a good faith purchaser for value.

"Good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing."[1] Ind. Code § 26-1-1-201(19). We addressed the good faith purchaser for value requirements in Marlow, 787 N.E.2d at 495-99. There, Conley sold a truck to the Medleys at a car show. Conley claimed that he owned a car lot. When Conley gave the Medleys the certificate of title, Marlow was listed as the truck's owner, and Conley assured the Medleys that "Marlow had signed the title as part of a deal Conley made with him." Marlow, 787 N.E.2d at 491. The Medleys then applied for a certificate of title in their name. Marlow later filed a complaint against Conley and the Medleys and alleged that Conley had stolen the vehicle. At the trial,

---

[1] This statute was amended in 2009. See Pub. L. No. 135-2009, § 1 (eff. July 1, 2009). It previously read: "'Good Faith,' means honesty in fact in the conduct or transaction concerned."

7

evidence was presented that Marlow told the police he had a business deal with Conley involving the sale of the truck to Conley but that Conley failed to perform his end of the deal. As between the Medleys and Marlow, the trial court entered judgment for the Medleys.

On appeal, we affirmed, holding that the Medleys were good faith purchasers for value under Indiana Code Section 26-1-2-403(1). Marlow's only argument was that the Medleys did not purchase the truck in good faith because the certificate of title was signed by Marlow, not Conley. We noted that Conley had failed to comply with the statutory requirements by selling the truck to the Medleys without first transferring the title to his own name. However, we held that the Medleys' failure to demand a proper certificate of title did not affect their status as good faith purchasers. Although the failure to comply with the statutory requirements regarding the certificate of title "may, combined with other suspicious circumstances, raise questions about a purchaser's good faith," we found no such other circumstances. Id. at 497-98. We also noted the purpose of Indiana Code Section 26-1-2-403(1), which was intended to determine the priorities between the two innocent parties:

> (1) the original owner who parts with his goods through fraudulent conduct of another and (2) an innocent third party who gives value for the goods to the perpetrator of the fraud without knowledge of the fraud. By favoring the innocent third party, the Uniform Commercial Code endeavors to promote the flow of commerce by placing the burden of ascertaining and preventing fraudulent transactions on the one in the best position to prevent them, the original seller.

Id. at 498 (quoting Mowan v. Anweiler, 454 N.E.2d 436, 439 (Ind. Ct. App. 1983)). "The policy behind the UCC is to favor the Medleys because, as between the Medleys and Marlow, Marlow was in the best position to prevent the fraudulent transaction." Id. We concluded that the Medleys were good faith purchasers for value. Thus, Conley, as a defrauding buyer, possessed voidable title and transferred good title to the Medleys as good faith purchasers for value.

Here, according to the Brinkleys, Gindelberger was not a good faith purchaser because he had constructive notice of their lawsuit against Haluska, which was already in progress when Haluska sold the vehicle on eBay. In support of their constructive notice argument, the Brinkleys rely on cases involving real estate transactions. For example, in the real estate context, a purchaser is presumed to have examined the records in the chain of title and is charged with actual or constructive notice of all such properly recorded instruments. See Bank of New York v. Nally, 820 N.E.2d 644, 648-49 (Ind. 2005). Further, lis pendens notices provide constructive notice of pending lawsuits that affect an interest in real estate. See Clarkson v. Neff, 878 N.E.2d 240, 243 (Ind. Ct. App. 2007), trans. denied. "If a lis pendens notice is properly filed on the public records, a subsequent purchaser will take the property subject to a judgment in the pending claim." Id. at 244 (quoting MDM Inv. v. City of Carmel, 740 N.E.2d 929, 934 n.3 (Ind. Ct. App. 2000)). However, we do not find the Brinkleys' argument persuasive. There is no "lis pendens notice" for automobiles, and the Brinkleys cite no authority requiring Gindelberger to search pending litigation records prior to purchasing a vehicle. Likewise, our research reveals no such requirement.

9

The Brinkleys also argue that Gindelberger failed to "get to know" Haluska as recommended by eBay. Prior to buying an automobile through an eBay auction, eBay recommends that a purchaser should "[g]et to know your seller," check the seller's "Feedback rating," and contact "the seller with any questions." App. p. 115. Haluska had a 100% positive feedback rating. The Brinkleys do not explain how "getting to know" Haluska was required to obtain status as a good faith purchaser. eBay's recommendations are just that—recommendations.

We conclude that the trial court properly found Gindelberger to be a good faith purchaser for value. As in Marlow, between the Brinkleys or Gindelberger, the Brinkleys were in the best position to prevent this allegedly fraudulent transaction. Because Gindelberger was a good faith purchaser for value, Haluska transferred good title to him. The trial court properly granted summary judgment to Gindelberger.[2]

## II. Claim against BMV

Next, the Brinkleys argue that the trial court erred by granting the BMV's motion for judgment on the pleadings. We review de novo a trial court's ruling on a Trial Rule 12(C) motion for judgment on the pleadings. Murray v. City of Lawrenceburg, 925 N.E.2d 728, 731 (Ind. 2010). We accept as true the well-pleaded material facts alleged in the complaint, and base our ruling solely on the pleadings. Id. "A Rule 12(C) motion for judgment on the pleadings is to be granted 'only where it is clear from the face of the

---

[2] The Brinkleys also briefly argue that the trial court abused its discretion by striking its hearing brief, which was filed on the day of the summary judgment hearing. Even assuming the trial court erred though, the Brinkleys have not shown that their substantial rights were affected. See Ind. Trial Rule 61. Even if we consider the Brinkleys' hearing brief, we still conclude that the trial court properly granted summary judgment to Gindelberger.

complaint [and answer] that under no circumstances could relief be granted.'" Id. (quoting Forte v. Connerwood Healthcare, Inc., 745 N.E.2d 796, 801 (Ind. 2001)).

According to the Brinkleys, the BMV improperly issued a certificate of title for the vehicle to Haluska. The Brinkleys contend that the BMV should have been aware that the Brinkleys did not receive proper notice of the auction and that the BMV acted arbitrarily. The BMV argues that it is entitled to immunity pursuant to the Indiana Tort Claims Act ("ITCA") for issuing the certificate of title.

"'A traditional formulation of tort liability requires the plaintiff to establish a duty, breach of that duty, proximate cause, and damages.'" Gary Cmty. Sch. Corp. v. Roach-Walker, 917 N.E.2d 1224, 1225 (Ind. 2009) (quoting 1 Dan B. Dobbs, The Law of Torts § 114, at 269 (2001)). "Immunity trumps all of these and bars recovery even where ordinary tort principles would impose liability." Id. "Thus, for example, the government and its employees are immune from liability for the 'initiation of a judicial or an administrative proceeding,' even if the action was taken in breach of a duty to act competently and in the public interest." Id. at 1225-26 (quoting I.C. § 34-13-3-3(6) (2008)). Whether an immunity applies is a matter of law for the courts to decide. Id. at 1226. The party seeking immunity bears the burden of establishing the immunity. Id.

The ITCA provides that governmental entities may be liable for torts committed by their agencies and employees. Flynn v. Indiana Bureau of Motor Vehicles, 716 N.E.2d 988, 990 (Ind. Ct. App. 1999), trans. denied. However, the ITCA protects governmental entities from liability if the tortious conduct falls within certain statutorily enumerated exceptions found in Indiana Code Section 34-13-3-3, which provides, in part:

11

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:

\* \* \* \* \*

(11) The issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law.

The BMV argues that, pursuant to Indiana Code Section 34-13-3-3(11), it is entitled to immunity because the issuance of the certificate of title was discretionary.

We addressed a similar issue in Flynn, 716 N.E.2d at 991-92. There, Flynn purchased a vehicle and applied to the BMV for a certificate of title, which the BMV issued. The vehicle was later confiscated because it was stolen. Flynn filed an action against the BMV, arguing that it negligently issued the certificate of title. The BMV moved for summary judgment, arguing that it was immune from liability under the ITCA, and the trial court granted summary judgment to the BMV.

On appeal, we affirmed the trial court's order. We noted, in part, that Indiana Code Section 9-17-2-10 provides: "If the bureau is satisfied that the person applying for a certificate of title is the owner of the vehicle, the bureau may issue a certificate of title for the vehicle." Id. at 991. The "[u]se of the term 'may' ordinary connotes discretion." Id. Accordingly, we concluded that "the issuance of certificates of title by the BMV is

12

discretionary within the meaning of IC 34-13-3-3(10)[3] in absence of other indications to the contrary." Id.

Flynn relied on other statutory provisions to argue that the BMV did not have such discretion. Flynn relied, in part, on Indiana Code Section 9-17-2-8, which provided that the BMV "shall use reasonable diligence in determining if the facts stated in an application for a certificate of title are true." Id. We rejected that argument and held "the BMV may not exercise this discretion arbitrarily, and a person may seek judicial review of an agency action that constitutes an abuse of discretion." Id. at 992 (citing I.C. § 4-21.5-5-14(d)(1)). Further, "the fact that the BMV is required to exercise diligence in determining the truth of the fact stated in an application is consistent with the idea that the BMV may not act arbitrarily." Id. We concluded that the BMV was immune from liability for losses resulting from the issuance or denial of a certificate of title, and the trial court properly granted summary judgment.

The Brinkleys argue that, regardless of Indiana Code Section 9-17-2-10, the BMV lacked such discretion due to Indiana Code Section 9-22-5-15(i), which, at the time of the issuance of the certificate of title, provided:

> A person who holds a mechanic's lien under this section shall execute and deliver to the purchaser of a vehicle under this section a sales certificate in the form designated by the bureau, setting forth the following information:
>
> (1)  The facts of the sale.
>
> (2)  The vehicle identification number.

---

[3] See now Ind. Code § 34-13-3-3(11).

> (3) The certificate of title if available.
>
> (4) A certificate from the newspaper showing that the advertisement was made as required under subsection (d).
>
> Whenever the bureau receives from the purchaser an application for certificate of title accompanied by these items, the bureau <u>shall</u> issue a certificate of title for the vehicle under IC 9-17.

I.C. § 9-22-5-15 (repealed by Pub. L. No. 125-2012, § 155 (eff. July 1, 2012) (emphasis added); <u>see</u> <u>now</u> I.C. § 9-22-1-21.5(i). Although Indiana Code Section 9-22-5-15 used the word "shall," it also required that the BMV issue the certificate of title under Indiana Code Article 9-17, which includes Indiana Code Section 9-17-2-10. Again, that statute gives the BMV discretion to issue a certificate of title.

The Brinkleys also focus on our holding that the BMV may not exercise its discretion "arbitrarily," but they ignore the remainder of the holding, which is that the aggrieved person may seek judicial review—not file an action for negligence, which is the route attempted by the Brinkleys. Contrary to the Brinkleys' argument, we find little to differentiate this case from <u>Flynn</u>. Consequently, we conclude that the BMV is immune from liability pursuant to the ITCA, and trial court properly granted the BMV's motion for judgment on the pleadings.

## Conclusion

The trial court properly granted summary judgment to Gindelberger, and the trial court properly granted the BMV's motion for judgment on the pleadings. We affirm.

14

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.