

**FILED**
Dec 29 2015, 8:32 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| James K. Wisco | Dan J. May |
| Foley, Foley & Peden, P.A. | Kokomo, Indiana |
| Martinsville, Indiana | |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Barker and Specialty Limos, LLC, | December 29, 2015 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 34A02-1506-PL-626 |
| v. | Appeal from the Howard Superior Court |
| | The Honorable Douglas A. Tate, Judge |
| Jason Price, | Trial Court Cause No. 34D03-1407-PL-10 |
| *Appellee-Defendant.* | |

**Najam, Judge.**

## Statement of the Case

[1]     John Barker and Specialty Limos, LLC (collectively, "Barker") appeal the trial court's entry of summary judgment for Jason Price. Barker raises a single issue for our review, which we restate as whether the trial court erred when it interpreted the parties' contract. We affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

In 2014, Barker contacted Price about a van Price had advertised for sale. The advertisement described the van as a 1994 Ford E-350. The advertisement promised a "clean" certificate of title but did not indicate a sale price. Appellant's App. at 14.

Barker and Price agreed to meet, and, on April 9, Barker inspected the van. Following Barker's inspection, he orally agreed to purchase the van from Price for $15,000. The parties then agreed in writing that Barker would make an immediate $2,000 deposit and Price would provide Barker "title by 4/14/14 or deposit will be refunded in full" ("the deposit agreement"). *Id.* at 15. The deposit agreement described the van as a Ford E-350 but did not specify the model year.

Sometime prior to April 14, 2014, Price provided Barker with a certificate of title for the van.[1] The certificate indicated that the owner of the van was a third party. On the reverse side of the certificate, the owner appeared to have

---

[1] Attached to a motion to correct error following the entry of summary judgment, Barker included an affidavit in which he asserted that Price had failed to present the certificate of title by April 14, 2014. And, on appeal, Barker asserts that this affidavit creates a genuine issue of material fact on this point. But the affidavit Barker submitted with his motion to correct error was not consistent with his affidavit in support of his motion for summary judgment, in which he made no assertion whatsoever that Price had not timely submitted the certificate of title. Rather, in response to the summary judgment motions Barker had only asserted that the certificate of title was deficient. *See* Appellant's App. at 12-13. Barker had his opportunity to designate evidence on the summary judgment motions prior to the court's ruling on them. He cannot unilaterally use a motion to correct error to circumvent our trial rules' requirements for the timely designation of materials in support of or against summary judgment. *See* Ind. Trial Rule 56(I); *see also New Albany-Floyd Cnty. Educ. Ass'n v. Ammerman*, 724 N.E.2d 251, 257 n.11 (Ind. Ct. App. 2000) (noting that evidence submitted not in support of a summary judgment motion but, rather, only in support of a motion to correct error "cannot be considered in [the summary judgment] context on appeal").

assigned her interest as a "seller," although the place for the purchaser's name was blank. *Id.* at 17. The certificate also described the van as a 1993 model rather than a 1994 model. Barker refused to accept the certificate of title and demanded a refund of his $2,000. Price, in turn, refused to refund the deposit.

Barker filed a small claim against Price for breach of contract, which was later transferred to the court's plenary docket. In his complaint, Barker alleged that Price had failed to provide a certificate of title in accordance with the deposit agreement, which entitled Barker to a refund of the deposit. On September 15, 2014, Barker filed a motion for summary judgment. Price responded and filed his own motion for summary judgment. After a hearing, the trial court entered summary judgment for Price. In relevant part, the trial court concluded that the year of the van was not a term material to the deposit agreement because that "agreement makes no reference to the year of the vehicle"; that Barker had accepted the van when he inspected it and paid the deposit; and that the certificate of title that Price tendered satisfied his obligation under the deposit agreement. *Id.* at 8-9. This appeal ensued.

## Discussion and Decision

### *Overview*

Barker appeals the trial court's entry of summary judgment for Price. Our supreme court has stated our standard of review as follows:

> We review summary judgment de novo, applying the same
> standard as the trial court: "Drawing all reasonable inferences in
> favor of . . . the non-moving parties, summary judgment is

appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). . . .

The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the nonmovant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*).

[7] Summary judgment is a "high bar" for the moving party to clear in Indiana. *Id.* at 1004. Further:

Summary judgment is a desirable tool to allow the trial court to dispose of cases where only legal issues exist. But it is also a "blunt . . . instrument" by which the non-prevailing party is prevented from having his day in court. We have therefore cautioned that summary judgment is not a summary trial and the Court of Appeals has often rightly observed that it is not appropriate merely because the non-movant appears unlikely to prevail at trial. In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.

*Id.* at 1003-04 (citations and some quotations omitted; omission original to Hughley).

[8] This appeal requires the interpretation of a contract. Interpretation and construction of contract provisions are questions of law. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). As such, cases involving contract interpretation are particularly appropriate for summary judgment. *Id.* And because the interpretation of a contract presents a question of law, it is reviewed de novo by this court. *Jenkins v. S. Bend Cmty. Sch. Corp.*, 982 N.E.2d 343, 347 (Ind. Ct. App. 2013), *trans. denied*. We review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the contract's language "so as not to render any words, phrases, or terms ineffective or meaningless." *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007).

[9] Generally, Indiana's courts apply the "four corners rule" to determine the parties' intent in entering into a written contract. *Brill v. Regents Comm'ns, Inc.*, 12 N.E.3d 299, 309 (Ind. Ct. App. 2014), *trans. denied*. That is, if the contract unambiguously demonstrates the parties' intent, we will simply apply the contract as written and, generally, "parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument . . . ." *Id.* (quotations omitted). However, the prohibition against the use of parol evidence "is by no means absolute." *Id.* (quotations omitted). And "where the existence . . . of a contract or the terms thereof is the point in issue, and the evidence is conflicting or admits of more than one inference, it is for the [trier of fact] to determine

whether a contract in fact exists." *City of Indianapolis v. Twin Lakes Enter., Inc.*, 568 N.E.2d 1073, 1079 (Ind. Ct. App. 1991), *trans. denied*.

[10] Here, Barker asserts that the entry of summary judgment for Price is erroneous for two reasons. First, he asserts that the model year of the van was a term material to his agreement to purchase it, and Price failed to present a certificate of title for a 1994 van. Second, he asserts that the certificate of title was in the name of a third party and, therefore, that Price did not satisfy his obligation to deliver title as provided under the deposit agreement. We address each argument in turn.

### Whether the Model Year of the Van was a Material Contract Term

[11] We first consider Barker's argument that the certificate of title presented by Price did not comply with the deposit agreement because the certificate showed a different model year for the van than the year specified in the advertisement. This issue turns on the scope of the deposit agreement, which is the only writing between the parties regarding sale of the van. The deposit agreement simply states that, in exchange for a $2,000 deposit, Price "will have title by 4/14/14" for a "Ford E-350 Van." Appellant's App. at 15. Because the deposit agreement does not specify the model year of the vehicle, Price asserts that the year must not have been a material term. As Price puts it, "the advertisement merged into the [deposit agreement]."[2] Appellee's Br. at 3. We must agree

---

[2] Price also suggests that Barker conceded at the summary judgment hearing that the model year of the van was not a material contract term, but we cannot agree. Barker plainly argued that the model year was a

with Barker that there is a genuine issue of material fact regarding whether the model year of the vehicle was a term material to the parties' agreement.

[12] We begin with a basic point: the deposit agreement does not contain the entire agreement between the parties. As our supreme court has explained:

> An integrated agreement is a writing constituting the final expression of one or more terms of the parties' agreement. Restatement (Second) of Contracts § 209 (1981). The question of whether an agreement is an integration is one of fact[] that[,] unlike other questions of fact, is decided by the judge as a question preliminary to application of the parol evidence rule. *Id.* In determining whether a writing is integrated, the judge should examine the writing itself to see whether it appears complete on its face and should also consider any other relevant evidence. *Id.*

*Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154, 162 n.7 (Ind. 2005).

[13] The deposit agreement is not the entire agreement in that it omits at least one essential term, namely, the sale price for the van. And it does not contain an integration clause. Thus, we cannot agree with Price's contention that the advertisement or any other prior negotiations "merged" into the deposit agreement. *See, e.g.*, *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1035-36 (Ind. Ct. App. 1998), *trans. denied*. To the contrary, it is

---

material term; when the trial court made it clear to Barker that it did not agree and wanted to advance the hearing to the next issue, Barker stated, "Ok, alright." Tr. at 18. This is not a concession. Further, in his affidavit in support of his motion for summary judgment, Price suggested that Barker had refused to accept the certificate of title because Barker had "found another van prior to 4/14/[2]014." Appellant's App. at 22. Of course, whether Barker had purchased another vehicle says nothing about whether Price had complied with his end of the parties' bargain.

apparent that the deposit agreement was only part of a larger agreement between the parties and that part of the agreement was not reduced to writing.

[14] Likewise, we are not persuaded by Price's argument that the deposit agreement speaks for itself when it omitted the model year from the vehicle's description. Price contends, in effect, that he could have produced a certificate of title for a Ford E-350 van manufactured in any year without affecting his deal with Barker. When the entire agreement between the parties is taken into account, we cannot say as a matter of law that the model year was not a material term. Indeed, in most automobile sales, the model year is a material term. Both new and used vehicles are typically offered for sale and sold based, in part, on the model year. And there is usually a correlation between the model year and the sale price.

[15] As the deposit agreement did not contain the entire agreement, it is necessary for the trier of fact to consider parol evidence. That is, the parol evidence rule, which operates to exclude "contemporaneous oral statements that contradict the terms of an integrated written agreement," does not apply here because there is no integrated written agreement. *Sees*, 839 N.E.2d at 162; *cf. Krieg v. Hieber*, 802 N.E.2d 938, 943-44 (Ind. Ct. App. 2004) (noting that, even when the parol evidence rule does apply, there are numerous exceptions, such as using extrinsic evidence to show a mistake in the formation of a contract or "to apply the terms of a contract to its subject matter").

[16] Accordingly, whether the parties here considered the model year of the vehicle to be a term material to their agreement must be resolved by considering evidence extrinsic to the deposit agreement, including the original advertisement. The advertisement demonstrates that Price offered a 1994 vehicle, and the evidence suggests that Barker agreed to purchase the vehicle advertised. Thus, we must conclude that whether the year of the vehicle was a term material to the parties' agreement is a question of fact that must be resolved by considering all the evidence, not merely a question of law based only on an interpretation of the deposit agreement. *See id.*

[17] In its summary judgment order, the trial court concluded, in the alternative, that Barker had accepted the van regardless of the model year when he paid the deposit after having inspected the van. But while Barker had inspected the van and paid the deposit, the deposit agreement makes it clear that Barker's acceptance remained contingent upon Price's delivery of the certificate of title. There is no designated evidence to show that Barker knew when he inspected the van that the model was anything other than the 1994 vehicle advertised, and Barker immediately rejected the van as nonconforming when he learned that it was not a 1994 vehicle. *See* Ind. Code § 26-1-2-606(1) (2014) (stating that an acceptance of goods occurs when the buyer signifies to the seller that the buyer will take or retain goods "in spite of their nonconformity"). Indeed, not until Price tendered the certificate of title did Barker have any reason to know that the model year was something other than 1994.

[18] On appeal, in defending the trial court's reasoning that Barker had accepted the van, Price cites Indiana Code Section 26-1-2.1-515. But that Section of the Indiana Code applies only to lease agreements. As the Code makes clear elsewhere, "a sale . . . is not a lease." I.C. § 26-1-2.1-103(1)(j). In any event, under the relevant sales provision of the Indiana Code, I.C. § 26-1-2-606(1), the designated evidence does not show that Barker's execution of the deposit agreement and payment of the deposit, alone, signified that the van was "conforming" with respect to the model year. Accordingly, we are not persuaded by this alternative explanation for the trial court's order.

[19] In sum, the deposit agreement is not the entire agreement between Barker and Price. Accordingly, the trial court erred when it concluded that the deposit agreement precluded Barker's claim that the model year was a term material to the parties' agreement for sale of the van. And we cannot say that the designated evidence otherwise shows that Price is entitled to judgment as a matter of law on this issue. We reverse the court's entry of summary judgment for Price and remand for further proceedings. On remand, the court shall consider not only the deposit agreement but also extrinsic evidence to determine whether, as between the parties, the model year was a term material to their agreement.

### Whether a Certificate of Title in Another's Name is Valid

[20] To prevent this issue from recurring on remand, we briefly address Barker's alternative argument that the trial court erred when it concluded that Price had delivered a valid certificate of title pursuant to the deposit agreement even

though the certificate of title was not in Price's name. In particular, Barker's only arguments here are, first, that title in a third-party's name is not clear title and, second, that the Indiana Certificate of Title Act, I.C. §§ 9-17-1-1 to -8-9, controls such issues rather than the sales provisions of the Indiana Uniform Commercial Code.

[21] This court has previously rejected those arguments. Specifically, in *Marlow v. Conley*, 787 N.E.2d 490 (Ind. Ct. App. 2003), Medley purchased a truck from Conley at a car show, and Conley gave Medley a certificate of title that was in the name of Marlow, a third party. Marlow eventually sued Medley for replevin of the truck on the grounds that Conley had acquired the certificate of title from him through fraud and Medley should have known better when he saw a third party's name on the certificate of title.

[22] In a thorough analysis, we concluded that Medley held valid title. *Id.* at 498-99. In most relevant part, we explained that a defrauding buyer obtains title that is voidable, not void, "which means that when title gets into the hands of a bona fide purchaser for value then he will prevail over the defrauded seller." *Id.* at 493. We also held that receipt of a certificate of title in the name of a third party, standing alone, does not demonstrate that a buyer is not a "good faith purchaser for value." *Id.* at 497-98. And we explicitly rejected Marlow's reliance on the Indiana Certificate of Title Act rather than the sales provisions of the UCC adopted in Indiana. *Id.* at 495-97.

[23] Barker's arguments with respect to the validity of the open title presented by Price are indistinguishable from the arguments we considered and rejected in *Marlow*. Thus, we apply *Marlow* and reject Barker's arguments that the certificate of title that Price tendered is not a "clean" title as advertised. To be sure, Barker and Price could have agreed that Price be the owner named on the certificate of title as an explicit term of their sale agreement, but there is no designated evidence to suggest that they did. Accordingly, the trial court correctly rejected Barker's arguments, and we affirm that portion of the trial court's judgment.

[24] Thus, we affirm in part, reverse in part, and remand for further proceedings.

[25] Affirmed in part, reversed in part, and remanded.

Riley, J., and May, J., concur.