## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2016, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Community Park Investments, Inc.,

*Appellant-Plaintiff/Counterdefendant,*

v.

Jamie Guess and Barry Lewis, Jr.,

*Appellees-Defendants/Counterplaintiffs*

October 26, 2016

Court of Appeals Case No.
46A05-1601-PL-224

Appeal from the LaPorte Superior Court

The Honorable Greta S. Friedman, Judge

Trial Court Cause No.
46D04-1509-PL-1605

**Crone, Judge.**

## Case Summary

Community Park Investments, Inc. ("CPI"), appeals the trial court's judgment in favor of Jamie Guess and Barry Lewis, Jr. (collectively "Tenants"). CPI asserts that the trial court erred in concluding that a mobile home sales contract entered into by the parties was unenforceable, and that the trial court similarly erred in failing to enforce a promissory note executed by Tenants. Finding no error, we affirm.

## Facts and Procedural History

The facts most favorable to the trial court's judgment indicate that Jacob Pasternac is the sole owner of CPI, which operates the Springhill Mobile Home Community in La Porte. On June 7, 2014, CPI entered into a month-to month lease agreement with Tenants wherein Tenants agreed to pay $550 per month to CPI beginning in August 2014. Tenants also executed a promissory note to CPI for $9000 for the purchase of the used mobile home in which they were living.[1] Of the $550 monthly payment, $300 was for lot rental and $250 was for interest on the promissory note. A bill of sale for the used mobile home was presented to and signed by Tenants. Neither Pasternac nor any other person signed the bill of sale on behalf of CPI. On June 7 and June 9, 2014, Pasternac drove Tenants to the bank to withdraw cash to pay toward the purchase price of the used mobile home. Tenants paid Pasternac $5000 in cash. Pasternac would not give Tenants a receipt for the payments.

---

[1] The promissory note stated that it was payable in full on or before March 31, 2015.

[3]     Thereafter, Tenants paid CPI $550 per month through March 2015. On March 20, 2015, Pasternac came to Tenants and demanded $9000 on the promissory note. Knowing that they had already paid $5000 toward the purchase, Tenants refused to pay. Pasternac told them the cost of the mobile home would now be $12,000. Tenants again refused to pay. Pasternac served Tenants with an eviction notice on April 7, 2015. Tenants did not make any more rent payments after receiving that notice.

[4]     CPI filed a small claims notice of eviction and complaint for damages against Tenants on July 2, 2015. In addition to eviction, CPI sought damages for unpaid lot rental and also sought $9000 based upon the alleged default of the promissory note. Tenants responded with a counterclaim against CPI alleging, among other things, that CPI created a "false contract" and failed to credit them for the $5000 collected by Pasternac. Appellant's App. at 18. CPI subsequently filed a motion to transfer the case to the plenary docket, and the trial court granted that motion. Following a hearing held on July 27, 2015, the trial court entered an eviction order against Tenants and set a damages hearing for September 2015. Tenants moved out of the mobile home and off CPI's property on July 31, 2015.

[5]     A damages hearing was held on September 21, 2015. CPI sought damages against Tenants in the amount of $13,836, which included $9000 for the cost of the mobile home, $3300 in unpaid rent ($1800 in lot rental and $1500 in interest), and $1000 for attorney's fees and costs. Tenants argued that CPI failed to sign the bill of sale for the mobile home and also did not have title to

the mobile home. Therefore, they argued, any agreement by them to buy the mobile home was invalid and unenforceable. Tenants further argued that while they admittedly failed to pay rent for four months after they received the eviction notice, the $5000 they paid Pasternac toward the purchase of the mobile home more than made up for any unpaid rent owed to CPI. Accordingly, Tenants claimed that they owed nothing to CPI.

[6] Following the hearing, the trial court entered its findings of fact and judgment, concluding in pertinent part,

[7] 11. That the testimony also showed that title to the mobile home was not in [CPI's] name. Additionally, [CPI] did not sign the bill of sale which clearly states "Not valid unless signed and accepted by an officer of the company or an authorized agent."

12. That the fact that testimony stated that [CPI] did not in fact have clear title which was not disputed or addressed by [CPI], and in addition [CPI] did not sign the bill of sale, thus making the contract void. And finally, inasmuch as [Tenants] paid a total of $7260, the Court finds for [Tenants] and therefore awards [CPI] nothing.

[8] *Id*. at 2. CPI now appeals. We will state additional facts in our discussion as necessary.

# Discussion and Decision

[9]     As a preliminary matter, we observe that the Tenants did not file an appellees' brief. Where an appellee fails to file a brief, we do not undertake to develop arguments on that party's behalf; rather, we may reverse upon a prima facie showing of reversible error. Morton v. Ivacic, 898 N.E.2d 1196, 1199 (Ind. 2008). Prima facie error is error "at first sight, on first appearance, or on the face [of] it." Id. The "prima facie error rule" relieves this Court from the burden of controverting arguments advanced for reversal, a duty which remains with the appellee. Geico Ins. Co. v. Graham, 14 N.E.3d 854, 857 (Ind. Ct. App. 2014). Nevertheless, we are obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required. Id. Accordingly, if the appellant is unable to meet the burden of establishing prima facie error, we will affirm. Id.

[10]    We also observe that the trial court entered findings of fact and conclusions thereon sua sponte.

> Sua sponte findings only control issues that they cover, while a general judgment standard applies to issues upon which there are no findings. We may affirm a general judgment with findings on any legal theory supported by the evidence. As for any findings that have been made, they will be set aside only if they are clearly erroneous. A finding is clearly erroneous if there are no facts in the record to support it, either directly or by inference.

*Eisenhut v. Eisenhut*, 994 N.E.2d 274, 276 (Ind. Ct. App. 2013) (citations omitted).

[11]  CPI asserts that the trial court erred in concluding that the bill of sale entered into by the parties regarding the purchase of the used mobile home was unenforceable, and that the trial court similarly erred in failing to enforce the promissory note executed by Tenants wherein Tenants agreed to pay $9000 for the used mobile home.  Although CPI attempts to treat the bill of sale and the promissory note as two separate agreements between the parties, we note that the two documents were executed simultaneously, and the bill of sale specifically references and incorporates the promissory note.  Therefore, we consider the two alleged agreements as one integrated and complete contract.2  After reviewing the documents and the facts in the record supporting the trial court's findings, we agree with the trial court that any agreement between the parties regarding the purchase of the used mobile home is invalid and unenforceable.

[12]  The existence of a valid contract is a question of law for the court.  *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016), trans. denied.  Pursuant to the bill of sale and promissory note, Tenants agreed to buy a used mobile home from CPI for $9000.  However, as specifically found by the trial court, neither Pasternac nor any other authorized agent of CPI signed the bill of sale, which clearly states "Not Valid Unless Signed and Accepted by an Officer of the

---

2  An integrated agreement "is a writing constituting the final expression of one or more terms of the parties' agreement.  The question of whether an agreement is an integration is one of fact[] that[,] unlike other questions of fact, is decided by the judge …." *Barker v. Price*, 48 N.E.3d 367, 371 (Ind. Ct. App. 2015) (citation omitted).  To determine whether a writing is integrated, "the judge should examine the writing itself to see whether it appears complete on its face and should also consider any other relevant evidence." *Id.*

Company or an Authorized Agent." Defendants' Ex. B. Generally, the validity of a contract is not dependent upon the signature of the parties, unless such is made a condition of the agreement. Nationwide Ins. Co. v. Heck, 873 N.E.2d 190, 196 (Ind. Ct. App. 2007). Here, it is abundantly clear from the language of the agreement that its validity is specifically contingent upon the signature of the seller or its agent. Accordingly, the trial court did not err in concluding that the bill of sale and promissory note were invalid and unenforceable. We affirm the trial court's judgment in all respects.

[13] Affirmed.

Kirsch, J., and May, J., concur.