

FILED

Aug 28 2019, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Jonathan D. Harwell
Harwell Legal Counsel LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David J. Jurkiewicz
Nathan T. Danielson
Christina M. Bruno
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| SWL, L.L.C. and Scott Lollar, | August 28, 2019 |
| *Appellants-Defendants/Counterclaim Plaintiffs,* | Court of Appeals Case No. 18A-CC-2955 |
| v. | Appeal from the Hamilton Superior Court |
| NextGear Capital, Inc., | The Honorable Steven R. Nation, Judge |
| *Appellee-Plaintiff/Counterclaim Defendant.* | The Honorable Darren J. Murphy, Magistrate |
| | Trial Court Cause No. 29D01-1608-CC-6680 |

**Najam, Judge.**

## Statement of the Case

[1] SWL, LLC ("SWL") and Scott Lollar (collectively, "Dealer") appeal the trial court's grant of summary judgment for NextGear Capital, Inc. ("NextGear")

on NextGear's complaint, which alleged that SWL had breached a contract with NextGear and that Lollar had breached a guaranty, and on Dealer's counterclaims against NextGear, which included claims for defamation and tortious interference with a business relationship. Dealer presents one issue for our review, namely, whether the trial court erred when it entered summary judgment for NextGear on its complaint and on Dealer's counterclaims.

We affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

On August 13, 2013, NextGear entered into a demand promissory note and loan and security agreement ("the Contract") with SWL in which NextGear agreed to extend to SWL a revolving line of credit or floor plan of up to $400,000, which SWL would use to purchase vehicles from auctions.[1] SWL and NextGear also entered into an advance schedule, which outlined the payment schedule and amounts that SWL was required to pay to NextGear for each vehicle that SWL had purchased using funds from NextGear. On that same day, Lollar, who operated SWL, executed an individual guaranty in which he agreed to "voluntarily, unconditionally, and absolutely" guarantee the liabilities of SWL under the Contract. Appellant's App. Vol. II at 39. After the

---

[1] The Contract originally provided that NextGear would extend a line of credit in the amount of up to $120,000, but the parties amended the Contract to increase the line of credit to $400,000.

parties executed the loan documents, NextGear advanced funds to SWL for the purchase of vehicles.

[4]     Sometime thereafter, Lollar contacted Karen Lee, an account executive with NextGear, by phone in order to inform NextGear that SWL wanted to liquidate its inventory and pay off its balances.[2]  In response, Lee proposed a plan that would continue SWL's business relationship with NextGear.  On February 24, 2016, Lee forwarded to Lollar a copy of an email that contained the terms of the proposed plan.  In that email ("the February email"), which Lee had previously sent to other employees of NextGear, Lee wrote:

> Dealer has been selling units, he's been paying off consistently through retail sales and auction sales[.  H]e's gone from outstanding of $203k down to 97k balance.
>
> . . . We are going to pay off [stock] #510 tomorrow . . . for full [purchase price], putting the funds in unapplied funds.  By Friday am, dealer will have enough cash to go with the unapplied funds to pay off [stock] #513.[3]   I am going to refloor #513 for full [purchase price].  This will reset the counter for the dealer to have the engine in #513 done, he has a [credit card] with available balance on it to pay for engine, he has a buyer on the unit and unit should be repaired and gone off floor plan before the next 30 days. . . .

---

[2]  It is not clear when Lollar contacted Lee.  The record simply indicates that Lollar called Lee sometime "[p]rior to February 24, 2016[.]"  Appellant's App. Vol. II at 119.

[3]  Stock number 510 and stock number 513 refer to vehicles in Dealer's inventory.

> Given with the speed the dealer is moving the units and with
> dealer staying on track, as well as the lengthy impeccable history
> with this dealer, . . . we need to move this direction & continue
> working with dealer to get back current. Of course, if any of this
> falls through we will have to reconvene with dealer and go a
> different direction.

*Id.* at 140. Lee later informed Lollar that "the plan had been approved by the

'front end risk manager'" for NextGear." *Id.* at 136.

The day after Lollar had received the email from Lee, Dealer paid NextGear

$7,562.86 to pay off stock number 510. Dealer then paid off stock number 513.[4]

Lee continued to assure Lollar "that [Dealer's] previous payments pursuant to

her plan would be placed in [its] unapplied funds account" for Dealer to use to

make the next curtailment payments. *Id.* at 137. However, NextGear did not

place any funds in Dealer's unapplied funds account. As a result, Dealer was

unable to make the next scheduled payments for the remaining vehicles.

NextGear then repossessed the remaining cars in Dealer's inventory that

NextGear had financed. Thereafter, NextGear informed Dealer's other lenders

that Dealer had defaulted on the loan documents, and Dealer's other lenders

then repossessed Dealer's remaining vehicles.

On August 4, NextGear filed a complaint against Dealer. In its complaint,

NextGear alleged that Dealer had not repaid the funds that NextGear had

---

[4] The record does not indicate how much Dealer paid toward unit 513.

advanced to Dealer in accordance with the loan documents. Accordingly, NextGear asserted that SWL had breached the Contract and that Lollar had breached the guaranty. In response, Dealer filed its answer and affirmative defenses. Specifically, Dealer asserted that it did not breach the Contract because the February email had "modified the terms" of the Contract, that Dealer had "performed all obligations required of [it] pursuant to the terms" of the modified contract when it submitted the payments for the two units, and that NextGear had "breached the terms of the parties['] modified agreement" when it failed to place those payments in Dealer's unapplied funds. *Id*. at 51. In addition, Dealer filed two counterclaims against NextGear. Dealer asserted that NextGear had committed defamation and tortious interference with a business relationship when it wrongfully informed other lenders that Dealer had defaulted on the loan documents.

[7] On February 16, 2018, NextGear filed a motion for summary judgment. In that motion, NextGear asserted that SWL had breached the terms of the Contract when it failed to make payments due under the Contract and that Lollar had breached the guaranty when it failed to pay SWL's debt. NextGear also asserted that it had not modified the Contract. As for Dealer's counterclaims, NextGear asserted that the Contract authorized NextGear to share information regarding Dealer's financial status with other lenders and that its statements to the other lenders were true. In support of its motion for summary judgment, NextGear designated the Contract and the affidavit of Greg Hidbrader, NextGear's Supervisor of Risk and Recovery, in which Hidbrader stated that

NextGear's advances to Dealer "have not been fully repaid as agreed." *Id*. at 113.

[8]     In response, Dealer asserted that there were genuine issues of material fact with respect to NextGear's affirmative defenses of modification and promissory estoppel. Specifically, Dealer asserted that a question of fact exists concerning whether Dealer "was induced to make certain payments" pursuant to Lee's statements and the February email and whether NextGear had "failed to comply with the terms of that agreement[.]" *Id*. at 125. In essence, Dealer argued that a genuine issue of material fact existed regarding whether NextGear had "caused [Dealer] to follow a plan which may have resulted in Dealer's alleged breach of the exact terms" of the Contract. *Id*. Dealer further asserted that there was a genuine issue of material fact with respect to whether NextGear had provided false information to Dealer's other lenders such that summary judgment was inappropriate on Dealer's counterclaims. In support of its opposition to NextGear's motion for summary judgment, Dealer designated the February email and Lollar's affidavit, in which Lollar stated that NextGear, through Lee, had proposed a plan to modify the Contract and that Lee had provided "assurances" to Lollar regarding the new plan. *Id*. at 137.

[9]     NextGear then filed a reply and supplemental evidence in support of its motion for summary judgment. In its reply, NextGear asserted that Dealer's affirmative defenses must fail because NextGear did not modify the Contract. It further asserted that there was no genuine issue of material fact regarding whether Dealer had breached the Contract because, as of March 30, 2016,

Dealer's payments were "delinquent" on seven vehicles. *Id*. at 149. NextGear also reiterated its assertion that, because its statements to Dealer's other lenders were true and authorized by the Contract, Dealer did not raise a genuine issue of material fact as to either counterclaim. Following a hearing, the trial court entered summary judgment in favor of NextGear on NextGear's complaint and on Dealer's counterclaims. This appeal ensued.

## Discussion and Decision

### *Standard of Review*

Dealer contends that the trial court erred when it entered summary judgment for NextGear. Our standard of review is clear. The Indiana Supreme Court has explained that

> [w]e review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id*. (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an

issue for the trier of fact. *Id.* at 761–62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909–10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (omission and some alterations original to *Hughley*). We may affirm an entry of summary judgment "if it can be sustained on any theory or basis in the record." *DiMaggio v. Rosario*, 52 N.E.3d 896, 904 (Ind. Ct. App. 2016).

[11] Further, this appeal requires us to interpret the Contract. The interpretation and construction of contract provisions are questions of law. *Barker v. Price,* 48 N.E.3d 367, 370 (Ind. Ct. App. 2015). As such, "cases involving contract interpretation are particularly appropriate for summary judgment." *Id.*

[12] Here, the trial court entered findings of fact and conclusions thereon in its summary judgment order. While such findings and conclusions are not required in a summary judgment and do not alter our standard of review, they are helpful on appeal for us to understand the reasoning of the trial court. *See Knighten v. E. Chicago Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). On appeal, Dealer asserts that the trial court erred when it entered summary judgment in favor of NextGear because there are genuine issues of material fact regarding Dealer's affirmative defenses to NextGear's complaint and Dealer's counterclaims. We address each argument in turn.

## *Affirmative Defenses*

Dealer first asserts that its designated evidence establishes genuine issues of material fact with regard to its affirmative defenses. As this Court has stated:

> In summary judgment proceedings, as at trial, the burden of establishing the existence of material affirmative defenses is on the defendant. In order to meet this burden, a defendant must show that a genuine issue of material fact exists as to each element of the asserted affirmative defense. We will affirm a grant of summary judgment if the defendant, in opposition to the plaintiff's summary judgment motion, failed to designate any evidence from which the trial court could infer the elements of the asserted affirmative defense.

*Paint Shuttle, Inc. v. Continental Cas. Co.*, 733 N.E.2d 513, 519 (Ind. Ct. App. 2000), *trans. denied* (internal citations omitted).

Dealer does not dispute that, following Lollar's receipt of the February email and Dealer's subsequent actions, Dealer "could not make the next scheduled curtailment payment." Appellant's Br. at 8. However, despite the missed payments, Dealer contends that the trial court erred when it entered summary judgment in favor of NextGear on NextGear's breach of contract claim because there are genuine issues of material fact concerning Dealer's affirmative defenses of modification and promissory estoppel.

## Modification

Dealer first contends that the trial court erred when it entered summary judgment in favor of NextGear on NextGear's breach of contract claim because

there are genuine issues of material fact with respect to Dealer's affirmative defense that NextGear had modified the Contract such that any breach was not due to any fault of Dealer. "As a general rule, '[q]uestions regarding the modification of a contract are ones of fact.'" *Gerdon Auto Sales, Inc. v. John Jones Chrysler Dodge Jeep Ram*, 98 N.E.3d 73, 80 (Ind. Ct. App. 2018), *trans. denied* (quoting *Skweres v. Diamond Craft Co.*, 512 N.E.2d 217, 221 (Ind. Ct. App. 1987)).

[16] Dealer asserts that genuine issues of material fact exist as to whether the parties modified the terms of the Contract through their conduct when Lee spoke with Lollar and sent Lollar the February email, and when NextGear accepted Dealer's payments on two vehicles in accordance with the email.[5] NextGear responds and asserts that there are no questions of fact and that summary judgment was appropriate because the Contract "can be modified only by the 'written consent' of both parties" and because any conduct suggesting that the Contract was modified "should not prevail" over that provision of the Contract. Appellee's Br. at 46.

[17] NextGear is correct that the plain language of the Contract states that it "may be modified or amended only upon the written consent" of NextGear and Dealer. Appellant's App. Vol. II at 26. However, "it is well settled that '[e]ven

---

[5] Other than Dealer's statement that the email "is a written instrument" that was "signed through normal e-mail signature," Dealer does not argue that the February email constituted a written modification to the Contract. Appellant's Br. at 11.

a contract providing that any modification thereof must be in writing may nevertheless be modified orally.'" *Gerdon Auto Sales, Inc.*, 98 N.E.3d at 80 (quoting *City of Indianapolis v. Twin Lakes Enters., Inc.*, 568 N.E.2d 1073, 1084-85 (Ind. Ct. App. 1991)). "Further, the modification of a contract can be implied from the conduct of the parties." *Id.* (quotation marks omitted). Accordingly, we must rely on the designated evidence to determine whether the conduct of the parties supports more than one inference of their intent. "The intent relevant in contract matters is not the parties' subjective intents but their outward manifestations of it." *Id.* In order to determine a party's intent, "a court does not examine the hidden intentions secreted in the heart of a person but should examine the final expression of that intent found in conduct." *Id.*

[18] Here, Dealer's designated evidence demonstrates that Lollar contacted Lee in order to terminate Dealer's business with NextGear. In response, Lee proposed a plan that would allow NextGear to keep Dealer's business. Specifically, in his affidavit, Lollar stated that the February email contained the "basic terms" of Lee's proposed plan, which called for SWL to pay off two vehicles and, in exchange, NextGear would "refinance" those two units and "deposit those funds in [Dealer's] unapplied funds account." Appellant's App. Vol. II at 136. Lollar also stated in his affidavit that Lee had informed him that the new plan "had been approved by the 'front end risk manager'" for NextGear. *Id.* Further, Lollar stated that, in response to his phone call with Lee and his receipt of the February email, Dealer paid off stock numbers 510 and 513.

Based on that designated evidence, we hold that the conduct of the parties is subject to more than one inference. In other words, Dealer designated evidence to raise a genuine issue of material fact with respect to whether NextGear intended to modify the terms of the Contract when Lee spoke with Lollar and sent Lollar the February email. Because the parties' conduct is subject to more than one reasonable inference, we cannot say as a matter of law that the parties did not modify the Contract. Rather, a genuine issue of material fact exists as to whether the parties modified the Contract through their conduct. Accordingly, the trial court erred when it found that the Contract had not been modified.

## Promissory Estoppel

Dealer also asserts that the trial court erred when it entered summary judgment on NextGear's claim for breach of contract because there are genuine issues of material fact concerning Dealer's affirmative defense of promissory estoppel. Promissory estoppel "is a judicial doctrine sounding in equity." *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001). Promissory estoppel is based on the underlying principle that "one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Id.* at 52. That is, where the parties may have believed they had a contract but in fact did not, promissory estoppel may apply to hold the parties to their representations to each other. *See Ind. Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 367 (Ind. Ct. App. 2008). To demonstrate that the doctrine of

promissory estoppel applies, Dealer must show: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *Hinkle v. Sataria Dist. & Packaging, Inc.*, 920 N.E.2d 766, 771 (Ind. Ct. App. 2010).

[21] Here, again, in support of its opposition to NextGear's motion for summary judgment, Dealer designated the February email and Lollar's affidavit. In the February email, Lee stated that NextGear was "going to pay off" stock numbers 510 and 513, "putting the funds in unapplied funds." Appellant's App. Vol. II at 140. And in his affidavit, Lollar stated that Lee had proposed "a plan" to keep SWL's business, which plan called for SWL to pay off two vehicles and, in exchange, NextGear would refinance those vehicles and place the funds in Dealer's unapplied funds account for Dealer to use to make the next curtailment payments. *Id*. at 136. Lollar also stated that Lee had told him that "the plan had been approved by the 'front end risk manager'" for NextGear and that he "had received assurances" from Lee about her plan. Appellant's App. Vol. II at 136, 137. Lollar further stated that he had "accepted" Lee's proposed plan and that Dealer paid off the two cars "pursuant to" the plan but that NextGear failed "to follow through on [its] promise to refinance those units," which caused Dealer to be "unable to make the next scheduled curtailments payments, which resulted in NextGear's repossession of the vehicles. *Id*. at 136, 137. Based on the February email and Lollar's affidavit,

Dealer designated evidence that shows that genuine issues of material fact exist as to whether NextGear made Dealer a promise, that it made that promise with the expectation that Dealer would rely on it, and that Dealer actually relied on that promise to its own detriment.

[22]  Still, NextGear asserts that Dealer has not demonstrated that NextGear made Dealer "a promise of a 'definite and substantial nature.'" Appellee's Br. at 48. Specifically, NextGear contends that, because Dealer's payments were delinquent on several vehicles at the time Lee emailed Lollar and because Lee's email only addressed two of those vehicles, "there is no evidence in the record addressing how [Dealer] intended to pay the *other*" delinquent payments. Appellee's Br. at 49 (emphasis in original). In essence, NextGear contends that any purported promise by Lee was not definite and substantial because Dealer was in default on other vehicles not addressed by Lee's email.

[23]  We agree with NextGear that it designated evidence to demonstrate that Dealer's "payments were delinquent" on several vehicles prior to the date Lee sent Lollar the email. Appellant's App. Vol. II at 149. However, in response to NextGear's motion, Dealer designated Lollar's affidavit as evidence. In that affidavit, Lollar affirmed that Dealer "was not in default" prior to the date that NextGear repossessed its vehicles. *Id.* at 138. Additionally, Lollar stated that Lee had proposed the plan to keep Dealer in business after Lollar had informed Lee that Dealer wanted to liquate its stock and pay off its debt. Lollar's affidavit is sufficient to raise a factual issue regarding whether Dealer was in default prior to Lee's email. *See Hughley*, 15 N.E.3d at 1004.

[24] NextGear also contends that the February email demonstrates that Dealer was in default at the time Lee sent it to Lollar. In support of that contention, NextGear relies on the language in the email that Dealer has "gone from outstanding of $203k to 97 balance" and that NextGear "need[s] to move this direction and continue working with dealer to get back current." Appellant's App. Vol. II at 140. However, Lollar's affidavit is sufficient evidence to create a genuine issue of material fact concerning whether Dealer was in default when Lee sent Lollar the February email. And even if Dealer were in default as of February 24, 2016, the designated evidence suggests that, because Dealer had a "lengthy impeccable history," NextGear proposed a course of action to cure any default and for Dealer to maintain its good standing. *Id.* We therefore cannot say as a matter of law that NextGear did not make a definite and substantial promise to Dealer. Rather, Dealer designated evidence in its opposition to NextGear's motion for summary judgment to show that genuine issues of material fact exist as to its affirmative defense of detrimental reliance and promissory estoppel.

[25] In sum, Dealer designated evidence to demonstrate that genuine issues of material fact exist with respect to both of its affirmative defenses. Accordingly, the trial court erred when it entered summary judgment for NextGear on its breach of contract claim. We therefore reverse the trial court's grant of summary judgment for NextGear on that claim. And because there is a question of fact regarding Dealer's affirmative defenses and whether SWL breached the Contract, there is also a genuine issue of material fact as to

whether Lollar breached the individual guaranty.[6] Accordingly, we also reverse the trial court's grant of summary judgment in favor of NextGear on its breach of guaranty claim.[7]

## *Defamation*

[26] Dealer next asserts that the trial court erred when it entered summary judgment in favor of NextGear on Dealer's counterclaim that NextGear had defamed Dealer. To establish defamation, Dealer must prove communication with defamatory imputation, malice, publication, and damages. *See Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014). NextGear is entitled to summary judgment on Dealer's defamation counterclaim if it demonstrates that the undisputed material facts negate at least one element of Dealer's counterclaim. *See Shine v. Loomis*, 836 N.E.2d 952, 956 (Ind. Ct. App. 2005).

[27] NextGear contends that summary judgment was appropriate on Dealer's defamation counterclaim because "any communications made by [NextGear] reflecting [Dealer's] negative Loan status would have been true." Appellee's Br. at 57. NextGear is correct that "[a]ny statement actionable for defamation must not only be defamatory, but false." *Miller*, 11 N.E.3d at 956. However,

---

[6] The parties do not dispute that NextGear's breach of guaranty claim is derivative of its breach of contract claim.

[7] Because we reverse the trial court's grant of summary judgment for NextGear on NextGear's claims for breach of contract and breach of guaranty, we need not address Dealer's arguments concerning NextGear's damages.

we have determined that there is a genuine issue of material fact regarding Dealer's affirmative defense of promissory estoppel and, thus, there is also a genuine issue of material fact concerning whether Dealer was in default as a result of its own actions or whether Dealer was not in default because it only missed the payments after it paid off two vehicles based on NextGear's promise that it would place those funds in Dealer's unapplied funds account, which NextGear did not do. Because there is a question of fact as to whether Dealer was in default on the Contract, there is a genuine issue of material fact with regard to whether NextGear's statements that Dealer had defaulted on the Contract were true.

[28] Still, NextGear asserts that summary judgment was appropriate because Dealer failed to designate any facts "of a particular time or place of communication or publication by [NextGear], the specific content of any [NextGear] communications, the exact recipient of any [NextGear] communications, or any specific facts to support malice." Appellee's Br. at 56. In other words, NextGear asserts that summary judgment was appropriate on this counterclaim because "it is not possible for the Court to examine any particular communication by [NextGear] 'in context' while giving it 'its plain and natural meaning.'" *Id.* at 57 (quoting *Branham v. Celadon Trucking Servs. Inc.*, 744 N.E.2d 514, 522 (Ind. Ct. App. 2001)).

[29] However, in his affidavit, Lollar stated that "NextGear had falsely told the lender for the automobiles for sale on [SWL's] lot, that [Dealer] had defaulted on [its] obligations to NextGear." Appellant's App. Vol. II at 137. Lollar

further stated that NextGear told the other lenders that Dealer had defaulted on the Contract "[e]ven though NextGear knew that [Dealer] was performing under the terms" of the February email. *Id.* Accordingly, contrary to NextGear's assertions, Dealer's designated evidence indicates that NextGear made statements regarding Dealer's loan status with NextGear to Dealer's other lenders even though NextGear knew Dealer was acting in reliance upon NextGear's promises and representations. As such, Dealer's designated evidence indicates to whom NextGear made its statements, what NextGear stated, and that NextGear allegedly made those statements even though NextGear knew the statements were false. Accordingly, Dealer provided sufficient information for a trier of fact to consider whether NextGear's statements amounted to defamation, especially given that we are required to indulge every inference in favor of the nonmoving party.

[30] On this counterclaim, the designated evidence demonstrates that there are genuine issues of material fact regarding whether NextGear's statements to Dealer's other lenders were true and whether NextGear defamed Dealer. The trial court therefore erred when it entered summary judgment for NextGear on Dealer's defamation counterclaim.

### *Tortious Interference with a Business Relationship*

[31] Finally, Dealer contends that the trial court erred when it entered summary judgment in favor of NextGear on Dealer's counterclaim that NextGear had

tortiously interfered with a business relationship.[8]  To prove that NextGear had interfered with Dealer's business relationship, Dealer was required to show:  (1) the existence of a valid relationship; (2) NextGear's knowledge of the existence of the relationship; (3) NextGear's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from NextGear's wrongful interference with the relationship.  *McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 344 (Ind. Ct. App. 2016).  "Additionally, our Supreme Court has held that 'this tort requires some independent illegal action.'"  *Id*. (quoting *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind.2003)).

[32]  On appeal, Dealer contends that the trial court erred when it entered summary judgment in favor of NextGear on Dealer's counterclaim for tortious interference with a business relationship because "NextGear does not dispute their contact" with the other lenders and because NextGear "falsely claimed that [Dealer] was in default when he was not."  Appellant's Br. at 15 (emphasis removed).  In essence, Dealer contends that NextGear had defamed Dealer, which defamation interfered with Dealer's relationships with other lenders and caused the other lenders to repossess the remainder of its inventory.

---

[8]  In its motion for summary judgment and on appeal, Dealer frames its counterclaim as tortious interference with a prospective business advantage, but Dealer provides the same elements as a cause of action for tortious interference with a business relationship.

"Defamation, however, does not constitute illegal conduct for the purpose of determining whether one tortiously interfered with the business relationship of another." *McCollough*, 337 N.E.3d at 344 (quotation marks omitted). Thus, even if Dealer prevails on its defamation counterclaim, NextGear's defamation of Dealer would not support Dealer's claim for tortious interference with a business relationship. Because Dealer did not designate any evidence to demonstrate that NextGear committed any illegal conduct other than defamation, Dealer has not met its burden to demonstrate a genuine issue of material fact on this issue. As such, the trial court did not err when it entered summary judgment for NextGear on Dealer's counterclaim for tortious interference with a business relationship.

### Conclusion

In sum, Dealer's designated evidence demonstrates that genuine issues of material fact exist regarding its affirmative defense of modification and its affirmative defense of detrimental reliance and promissory estoppel. Accordingly, we hold that the trial court erred when it entered summary judgment in favor of NextGear on NextGear's breach of contract claim. And because there is a genuine issue of material fact regarding whether SWL breached the Contract, there is also a genuine issue of material fact as to whether Lollar breached the individual guaranty. We also hold that the trial court erred when it entered summary judgment in favor of NextGear on Dealer's counterclaim for defamation because there is a genuine issue of material fact concerning whether NextGear's statements to Dealer's other

lenders were true. But we hold that the trial court did not err when it entered summary judgment for NextGear on Dealer's counterclaim for tortious interference with a business relationship because Dealer has not alleged that NextGear committed any illegal action other than defamation to support its claim. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

[35] Affirmed in part, reversed in part, and remanded.

Bailey, J., and Altice, J., concur.